In the Matter of WILLIAM H. BIRMINGHAM, Appellant-Respondent, against ERNEST W. MIRRINGTON, JR., et al., as Members of the City Council of the City of Niagara Falls, et al., Respondents-Appellants.

Fourth Department, October 27, 1954.

*A. Russell Leone* for appellant-respondent.

*Clarence W. Greenwald, Corporation Counsel (Ralph A. Boniello* of counsel), for respondents-appellants.

*Nathaniel L. Goldstein, Attorney-General (Wendell P. Brown* and *George H. Rothlauf* of counsel), *amicus curiæ,* on behalf of New York State Employees' Retirement System and another.

VAN DUSER, J. This is a proceeding brought under the provisions of article 78 of the Civil Practice Act. An order is sought directing the City of Niagara Falls to continue petitioner on the payroll of that city, and to pay him certain amounts of money claimed as back salary, pursuant to the provisions of section 207-a of the General Municipal Law of the State of New York.

The issues involved were referred to Hon. SAMUEL J. HARRIS, Official Referee, to hear and determine. The City of Niagara Falls has appealed from so much of the order entered on his decision as directs the continuance of petitioner on the payroll of the city, at a salary of $2,830 per annum, and as directs it to pay his salary from February 1, 1953, to June 30, 1953, at that

raté. Petitioner appeals from that part of the order which directs payment of his unpaid back salary for the period February 1, 1953, to June 30, 1953, and thereafter, at the rate of $2,830 per annum, claiming it should be based on increased salary rates.

The petitioner was appointed a fireman in the city of Niagara Falls on March 1, 1917, and subsequently attained the rank of captain. While engaged in his duties as captain on June 26, 1942, he sustained accidental injuries, which rendered him permanently and totally disabled for regular duty as a member of the fire department. His salary at that particular time was at the rate of $2,830 per year. That salary has been raised from time to time by the city, and petitioner has been paid thereafter at the higher rate. He was forty-four years of age at the time he received his injuries.

After receiving the injuries to which reference has been made, he was declared permanently disabled by the Workmen's Compensation Board, and an award was made to him at the rate of $28 per week, subsequently reduced to $25 per week on June 1, 1947. Up to August 15, 1945, he was paid the full amount of his salary from the city, but the city claimed and received, from the Workmen's Compensation Board his weekly award as reimbursement to the city on the payment of his salary. The right of the city to receive such, and to pay petitioner only the surplus, is not here involved. A final award for compensation was made on March 8, 1945.

From the date of his injuries and consequent disability, petitioner claimed and received benefits pursuant to section 207-a of the General Municipal Law, which at the time petitioner was injured, provided as follows: " § 207-a. *Payment of salary, medical and hospital expenses of firemen with injuries or illness incurred in performance of duties.* Any fireman in a city of less than one million population, or town or village having a paid fire department, who is injured in the performance of his duties or who is taken sick as a result of the performance of his duties so as to necessitate medical or other lawful remedial treatment, shall be paid by the municipality in which he is employed the full amount of his regular salary or wages until his disability arising therefrom has ceased, and, in addition, such municipality shall be liable for all medical treatment and hospital care furnished during such disability. Provided, however, and notwithstanding the foregoing provisions of this section, the municipal health authorities or any physician appointed for the purpose, may attend any such injured or sick **fireman, from** time to time,

for the purpose of providing medical, surgical or other treatment, or for making inspections, and the municipality shall not be liable for salary or wages payable to such a fireman, or for the cost of medical or hospital care or treatment furnished, after such date as the health authorities or such physician shall certify that such injured or sick fireman has recovered and is physically able to perform his regular duties in the department. Any injured or sick fireman who shall refuse to accept such medical treatment or shall refuse to permit medical inspections as herein authorized, shall be deemed to have waived his rights under this section in respect to medical expenses incurred or salary or wages payable after such refusal.''

On or about March 8, 1945, the comptroller of the City of Niagara Falls requested the petitioner to file an application for accidental disability retirement under the provisions of section 65 of the Civil Service Law. Petitioner declined to do so.

Section 65, now section 79, of the Civil Service Law, provided: '' Medical examination of a member under sixty years of age in service for accident disability and investigation of all statements and certifications by him or on his behalf in connection therewith shall be made upon the application of the head of the department in which said member is employed, or upon the application of said member or a person acting in his behalf stating that said member is physically or mentally incapacitated for the performance of duty as a natural and proximate result of an accident sustained in service as a member and certifying the time, place and conditions of such service performed by said member resulting in such alleged disability, and that such alleged disability was not the result of willful negligence on the part of said member and that said member should therefore be retired.'' It further provided that if such medical examination and investigation showed that the said member is physically or mentally incapacitated for the performance of service as a natural and proximate result of an accidental injury received in such service while a member and that such disability was not the result of willful negligence on the part of such member and that such member should be retired, the medical board should so certify to the Comptroller, stating the time, place and conditions of such service performed by said member resulting in such disability and the Comptroller should retire the said member for accident disability within ninety days after the execution and filing of application therefor with the Comptroller or such other day as may be approved by the Comptroller.

Petitioner was a member of the State Retirement System. In fact, by chapter 891 of the Laws of 1942, effective May 18, 1942, about a month prior to the receipt of the accidental injury by petitioner, membership therein became compulsory " for all * * * firemen * * * employed in cities * * * which do not maintain a local pension system ", which the City of Niagara Falls did not, so far as the record discloses.

On or about January 24, 1945, without notice to, without his knowledge, and without the consent of the petitioner, the head of the Niagara Falls Bureau of Fire prepared and filed with the State Retirement System, an application for the retirement of the petitioner due to his disability. Thereafter petitioner was requested to appear for medical examination as to his physical condition. He refused to have such an examination made or used for the purpose of any retirement under section 65 (now § 79) of the Civil Service Law, but since, under the provisions of section 207-a of the General Municipal Law, he was required to undergo an examination to establish continued service disability, he consented to such an examination by the health officer of the City of Niagara Falls, under a distinct claim on his part, however, that such examination was submitted to by him solely in accord with the provisions of section 207-a of the General Municipal Law, and not to be used by the city authorities in the application made by the head of the fire bureau for his retirement, under the quoted section of the Civil Service Law. Notwithstanding, he was retired against his expressed wishes, and under date of August 9, 1945, the State Comptroller notified the city authorities of Niagara Falls to remove petitioner's name from the payroll after August 14, 1945, claiming that petitioner " has made application for accidental disability retirement to become effective the 15th day of August 1945 ". This, of course, was not the fact, as petitioner made no such application. As a matter of fact, protest was made by the petitioner to the State Comptroller, and the city authorities. Despite the notification of his " retirement ", the city continued to pay petitioner the difference between his then present pay and the Workmen's Compensation Fund award until February 1, 1953, when he was notified by the Niagara Falls authorities that he would no longer receive payments from the city by virtue of the provisions of section 207-a of the General Municipal Law, and that his name was being removed from the payroll of the city as of that day.

Thus we have here a situation where the petitioner is asserting his claims and his claimed rights under one law, section 207-a of the General Municipal Law, and the city and the State are

resisting the claims asserting that section 65 (now § 79), of the Civil Service Law governs.

It would seem, therefore, that there is ground for the suggested contention that section 207-a of the General Municipal Law and section 65 (now § 79) of the Civil Service Law, are in conflict. If such is the case, action by the Legislature can remove any such conflict. We, however, do not feel such a conflict does, in fact, exist. It is apparent that the Legislature intended no such conflict, but on the contrary, adopted section 207-a of the General Municipal Law, in furtherance of its public policy to protect firemen injured and disabled while in the performance of their duties. Section 65 (now § 79) of the Civil Service Law was originally enacted in the year 1920, and was in full force and effect when the Legislature adopted chapter 562 of the Laws of 1938, which became effective April 7, 1938. That enactment was added to the Consolidated Laws, and to that portion thereof entitled '' General Municipal Law '', by chapter 15 of the Laws of 1941, effective February 17, 1941, after a recommendation that such be done by the Law Revision Commission, which at that time stated: '' Its purpose is to further public convenience and logical arrangement by incorporating in the General Municipal Law an unconsolidated law of a general and permanent · character '' (1941 Report of N. Y. Law Revision Commission, p. 469). Thus, and thereby, the enactment of chapter 562 of the Laws of 1938, became section 207-a of the General Municipal Law. Notwithstanding the continuing existence of section 65 (now § 79) of the Civil Service Law, section 207-a of the General Municipal Law was thereafter amended by the Legislature in the years 1946 and again in 1951, which would indicate no intention on the part of the Legislature to repeal, or make that section ineffective in any way. No intention on the part of the Legislature to abrogate the provisions of section 207-a of the General Municipal Law has been called to our attention, and we cannot find any such.

As has been pointed out, the city and State oppose the position of the petitioner, claiming and asserting that he has been retired by the action of the Niagara Falls authorities in removing his name from the payroll, under the direction of the Department of Audit and Control of the State of New York. This position overlooks the fact that petitioner has at no time consented thereto, but has protested such action, asserting that he is entitled to the full benefit of the provisions of section 207-a of the General Municipal Law, still in effect and never repealed. In furtherance of their position the city and State point to *Matter of Robin-*

*son* v. *Cole* (193 Misc. 717). That case, however, is not inconsistent with the position of the petitioner here, but, on the contrary, lends support to his position. In that case, petitioner was a paid fireman in the city of Corning, and was injured while engaged in the performance of his duties. He applied for compensation under the provisions of the Workmen's Compensation Act. His claim was denied and rejected. Thereupon, he *applied* for retirement under the provisions of section 65 (now § 79) of the Civil Service Law, was retired, and ever since his retirement received benefits from the State Retirement System as therein provided. Some three years after his voluntary retirement, he filed a claim with the City of Corning, claiming that, under the provisions of section 207-a of the General Municipal Law, he was entitled to receive the full amount of his regular salary during the entire term of his disability, and to receive such, in addition to the benefits and payments received by him from the State Retirement System. Such claim was thereafter disapproved and rejected by the Corning city council, and Robinson brought the proceeding mentioned. As the court in that case, however, pointed out, the petitioner there unquestionably *retired* from the fire department, *at his own request.* '' He was not compelled to retire  *  *  *  but he elected to do so. He could have remained a city fireman, receiving the full amount of his regular salary or wages  *  *  *  but he elected not to do so. After failing in his efforts to secure compensation, he chose to retire. He thereby effectively severed his connection with the department, he has ceased to remain a resident of Corning  *  *  *  He is no longer a ' fireman '. He ceased to be such. He is no longer a city employee.  *  *  * Manifestly, the purpose and aim of section 207-a is to provide for the protection and benefit of an employee, while he remains an employee; for the benefit of a fireman of a paid fire department, while he remains a member of that fire department. It does not contemplate payment when he ceases to be an employee of the city and a member of the department.'' (*Matter of Robinson* v. *Cole,* 193 Misc. 717, 719–720, *supra.*) As further pointed out therein (p. 719), '' Unquestionably had petitioner's status not changed between the time of his injury and the institution of the present proceeding, he would be entitled to receive the full amount of his regular salary or wages, unless, in accordance with the provisions of the section quoted, the municipal health authorities or any physician appointed for the purpose certified that the petitioner had recovered and was physically able to perform his regular duties in the department ''.

In the instant case, petitioner never ceased to claim the benefits provided for him under the provisions of section 207-a of the General Municipal Law; he did not voluntarily retire. In fact, he never did retire, and under the circumstances in this record, he has not retired, nor has he effectively been retired. He is entitled, under the provisions of section 207-a of the General Municipal Law, to his compensation as long as he has not recovered from his injury, even if such remains through the rest of his life.

The petitioner further claims that he is entitled to receive the successive raises given to those in the status or grades similar to his since the time of his injuries. The learned Official Referee held to the contrary, and to the effect that he is entitled to receive only the salary or wage he was drawing at the time of receiving his disability. This was error, inasmuch as that precise question was passed on to the contrary by this court in *Matter of Barber* v. *Lupton* (282 App. Div. 1008, affd. 307 N. Y. 770).

The case of *Matter of Tyler* v. *Gadwood* (279 App. Div. 1138) to which reference is made, involved a different question than presented here, and is not here pertinent.

It follows that petitioner is entitled to have his name restored to the payroll of the City of Niagara Falls, and to receive the successive raises given to those in the status or grades similar to his since the time of his injuries, and to have his unpaid back pay figured on the rate in effect at such time.

The order, from which the appeals were taken, should be modified in accordance herewith, and as modified affirmed, with costs.

All concur. Present — VAUGHAN, J. P., KIMBALL, PIPER, WHEELER and VAN DUSER, JJ.

Order modified on the law in accordance with the opinion, and, as modified, affirmed, with costs to appellant.