Frederic T. Henry, J.
The petitioner has shown that on June 28, 1955, he was a Fire Lieutenant employed by the City of Rochester, and was engaged in the demonstration of a new fire fighting technique involving the use of a portable turret gun. While standing on a hosebed inside a fire truck he and several other firemen began lifting the turret gun which weighed over 200 pounds. A piece of hose on which petitioner was standing turned over, or separated, and he slipped down six or seven inches from his former position, momentarily losing his balance. He exerted his full strength to try ‘ ‘ to keep it up there ’ ’. At this moment he saw a brilliant flash ‘ ‘ as though someone had taken a — a mirror and flashed the sun across the eyes.” He continued with his work that day and in the days following, but objects appeared darker than usual to him that day and the following day hazy and distorted. He did not report the accident at the time nor in the weeks following when the vision of his right eye continued to deteriorate, explaining on trial that: “ I couldn’t put my finger on where it had come from. You can’t report something that you don’t know exactly what to report ”. He consulted a physician on September 14 who found that visual acuity in the right eye was 20/50, but on subsequent examination on October 7,1955, vision had dropped to 10/200. Internal examination of the eye revealed a retinal detachment involving approximately 75% to 80% of the retina. On being advised of the full case history, Ms physician stated Ms opinion that there was a direct relationship between the accident and the subsequent condition of deteriorating eyesight, progressively detached retina, and eventual blindness in the right eye.
Respondents maintain that the eventual detached retina and blindness of petitioner is the result of a long course of chronic intraocular inflammatory disease, and that final total disability would have occurred regardless of his employment, and that the alleged accident of June 28, 1955, during the course of petitioner’s employment, did not occur. The respondents have shown that the petitioner did not report the alleged accident of June 28,1955 to his superiors. Co-workers of the petitioner, who were worMng with him on the day of the alleged accident have testified that they do not recall the occurrence of the accident which the petitioner described. This evidence is properly to be considered in determining whether or not such an accident occurred. In view of the fact, however, that the alleged accident was not extraordinary and did not result in any apparent damage or injury, it seems doubtful if the witnesses would have noticed or remembered it. The fact that petitioner did *616 not report the June 28 incident to his superiors or his co-workers does not refute his statement of the occurrence, in view of his explanation, bearing in mind his past recurring eye complaints and considering that he did give his physician the exact time of the event of his eye shock. On all the evidence, I find that the alleged accident of June 28,1955, described by the petitioner, did in fact occur.
Until October of 1943 when he was in the Army, petitioner had normal vision of his right eye. He began to have trouble with it and was diagnosed as having retinal chorioiditis, also known as chorioretinitis, for which he received a medical discharge and a 10% disability pension from the Federal Government. Petitioner later left college on a recurrent attack and also left a subsequent job on complaint of eye strain in 1946. Acute chorioretinitis of the right eye was then diagnosed. In 1947 petitioner applied for and was accepted as a fireman of the City of Rochester. An eye examination by the fire department’s examining physician showed normal vision of both eyes at such time, and also later in 1954, when petitioner applied for promotion to lieutenant. During this period and from the time of his first application petitioner had approved the obtaining of his medical history by the Rochester Civil Service Commission, and that office had a report of his history of chorioretinitis.
In March of 1955 petitioner was examined by a private physician who found that although sight was normal, tissue scars of past chorioretinitis were visible, and, more important, that petitioner had a partially detached retina in the right eye. Approximately % or % of the retina was detached, and . it came within six degrees of the macula region. The condition could have been caused by recurrent chorioretinitis. Once existing, the prognosis is generally poor, although some cases may be successfully treated by surgery. Both petitioner’s physician on direct examination and the fire department’s examining physician on cross-examination stated that, with the prior existing condition of a detachment, a sudden jolt or strain as described by petitioner to have occurred June 28 could very probably cause or hasten a much more severe detachment.
I find from the evidence that the accident of June 28, 1955, was a competent producing cause of injuries to petitioner which resulted in his disability.
Respondents maintain that petitioner has been guilty of laches in failing to notify the city at an earlier date of the accident. However, the only witness not immediately available to the city on this trial was a co-worker who had left the State, *617 and there was no showing by either party that his testimony would have favored either respondents or petitioner. Other co-workers were produced, and all medical records were available. Even if the city had been promptly advised of the accident, the same move for retirement would have followed under the special provision for retirement of a fireman in the City of Rochester. It does not appear that the city is prejudiced by this delay.
The petition which sought relief under the provisions of section 207-a of the General Municipal Law was amended at the close of the trial to obtain relief in the alternative under the provisions of chapter 767 of the Laws of 1948. Section 207-a of the General Municipal Law is derived from chapter 562 of the Laws of 1938. It was re-enacted by chapter 15 of the Laws of 1941, and amended by chapter 919 of the Laws of 1946.
On April 3, 1948, chapter 767 of the Laws of 1948 became a law amending the Charter of the City of Rochester (L. 1907, ch. 755, § 329) in relation to compensation for loss and injury of officers and members of the police and fire force. This law contained all the provisions of section 207-a of the General Municipal Law and contained a further provision as follows: “Notwithstanding the provisions of any general, special or local law, any member of the police and fire force who is injured in the performance of his duty or is taken sick as a result of the performance of his duties so as to necessitate medical or other lawful remedial treatment shall be compensated in accordance with the provisions of this section until the health officer [or any physician appointed for that purpose] * * * shall certify to the commissioner of public safety * * * that such member is permanently disabled and unfit to perform any fire or police duty and shall recommend that said member be retired from the force as provided by law.”
This law was passed in accordance with section 11 of article IX of the .Constitution and section 57 of the Legislative Law. It is a special act, and as such prevails over the provisions of section 207-a of the General Municipal Law insofar as the two are in conflict. ‘ ‘ When a special act is passed covering the subject of a previous general law, the latter is repealed insofar as the special act applies and the two are in conflict. Any other conclusion would destroy the effect of all special acts on subjects covered by general legislation. A repeal of this kind, however, is more in the nature of the creation of an exception to the general rule, than an abrogation of any part *618 of the general law. The general law retains its force, but an exception is made for the particular case. Especially is this so, when the special law covers the whole subject matter of the general law.” (McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 397.)
Under the provisions of chapter 767 of the Laws of 1948 the petitioner is a member of the fire force who was injured in the performance of his duties so as to necessitate medical or other lawful remedial treatment and he is entitled to the full amount of his salary, medical treatment and hospital care during such disability, until the health officer or physician, appointed for the purpose, shall certify to the Commissioner of Public Safety that such member is permanently disabled and unfit to perform any fire or police duty and shall recommend that said member be retired from the force as provided by law.
The parties have stipulated that petitioner “ was terminated, according to the records on July 9th, 1956”; that his salary was then $5,310 per year; that the reason for the termination was: “unable to perform regular fire duty. Termination recommended by Bureau Surgeon ’ ’, and that he did not work as a fireman after October 11, 1955. Dr. Geraci testified that he has been surgeon for the Fire Bureau of the City of Rochester from September, 1951; that he examined petitioner in July, 1956, and that he wrote a letter (Ex. H) to the Commissioner of Public Safety. Exhibit H is in evidence on stipulation of the parties. It is as follows:
July 11, 1956 Re: David F. Adam 109 George St. Deputy Commissioner Victor C. Raycroft Department of Public Safety 34 City Hall ' , „ Rochester 14, New York Dear Mr. Raycroft:
Fireman David F. Adam has a bilateral chorioretinitis with a detached retina — a condition of the eyes affecting vision. His vision has become progressively worse in spite of surgery.
His vision will probably never improve and be may eventually become totally blind. Therefore I feel that this man will never be able to return to the regular duties of a fireman. It is my opinion that the condition of his eyes is not a result of any injury he may have sustained while on duty as a fireman.
Very truly yours, Joseph W. Geraei, M.D. JWG/mjg
This letter is not such a certificate as is required by law to terminate the petitioner’s right to be compensated. It does *619 not certify that the member is permanently disabled and unfit to perform any fire duty. It does not recommend that he be retired from the force as provided by law.
The Commissioner is required by the provisions of chapter 767 of the Laws of 1948 to compensate petitioner in the full amount of his salary until the certification and recommendation specified in the law has been made. The Legislature adopted chapter 767 of the Laws of 1948 as it did section 207-a of the General Municipal Law “ in furtherance of its public policy to protect firemen injured and disabled while in the performance of their duties.” (Matter of Birmingham v. Mirrington, 284 App. Div. 721, 726.) In acordance with that policy it must he held that while such an employee may not have double payment by both the muicipality and the State (Matter of Robinson v. Cole, 193 Mise. 717) he must at all times be protected in his right to be compensated by one of them.
The petitioner is entitled to an order requiring the respondents to continue petitioner on the payroll of the City of Eochester and to pay his salary from July 9, 1956.