In the Matter of FRANK H. WEBER, Appellant, v DEPARTMENT OF FIRE OF THE CITY OF SYRACUSE et al., Respondents.

In the Matter of FRANK H. WEBER, Appellant, v THOMAS F. HANLON, as Chief of the Department of Fire of the City of Syracuse, et al., Respondents.

Fourth Department, November 5, 1976

*Blitman & King (Charles Blitman* of counsel), for appellant.

*Edward P. Kearse, Corporation Counsel (David Marx, Jr.,* of counsel), for City of Syracuse, respondent.

GOLDMAN, J. Petitioner Frank H. Weber appeals from two judgments which dismissed his two article 78 proceedings without hearings. In his first proceeding petitioner seeks to compel the City of Syracuse (City) to pay him disabled fire-fighter's benefits pursuant to section 207-a of the General Municipal Law. The second judgment denied a related proceeding in which petitioner seeks to annul a determination whereby respondents, the Syracuse Fire Chief (Chief) and the Onondaga County Department of Personnel, had refused to permit petitioner to withdraw his application for retirement.

By letter dated September 24, 1973 petitioner informed the Chief that he wished to tender his resignation, "to become effective October 26, 1973", from his job as a firefighter, which he had held since April 1, 1946. The letter requested that his pension checks be mailed to a stated address. By notice of petition dated three days after the resignation letter petitioner commenced his proceeding to secure section 207-a of the General Municipal Law benefits from the City. The petition alleges that on April 21, 1952, while washing a glass light globe in the course of his duties, petitioner cut his wrist and sustained nerve and tendon damage which, as his physi-

cian found, rendered him "permanently disabled".[1] The petition further alleges that respondents "were informed of petitioner's desire to utilize section 207-a of the General Municipal Law and they have refused to comply therewith". The petition seeks judgment compelling respondents to pay him his regular wages and medical expenses until the cessation of his disability.

By letter dated October 5, 1973 the Chief informed petitioner that his resignation "has been accepted * * * effective at 0800 hours, October 26, 1973". Petitioner, by letter to the Chief dated October 11, 1973, stated that he intended to seek judicial determination of his eligibility for section 207-a benefits, and that if the courts should find him ineligible he would "have no alternative" but to retire. The letter further stated that it was petitioner's understanding that he would remain on the fire department payroll until late October. The letter also requested the Chief to "hold in abeyance" petitioner's "application for retirement" pending court decision regarding his section 207-a eligibility.

In their answer, verified October 12, 1973, respondents deny those allegations in the petition which referred to injury and refusal to confer section 207-a benefits. As an affirmative defense, respondents allege that petitioner's resignation had been delivered and accepted, that it could not be withdrawn without the Chief's consent, and that it rendered him ineligible for section 207-a benefits. The answer further alleges that petitioner had applied for benefits under the New York State Retirement Law.

Petitioner's document styled "reply and affidavit", verified October 17, 1973, alleged, *inter alia,* that his retirement letter of September 24, 1973 had been sent without the advice of counsel and without realization that it might prejudice his claim for section 207-a benefits. Annexed to the reply is a letter, dated October 16, 1973, which petitioner had sent to the New York State Policemen's and Firemen's Retirement System requesting the withdrawal of the retirement applica-

---

1. In view of the lapse of more than 20 years between the alleged injuries and the instant claim, it is surprising that respondents have not interposed the defense of laches. However, the petition does not indicate when the injury was discovered to be permanent, and it is conceivable, but not alleged, that the claim may involve recent aggravation of an old injury. The petition makes no explanation why petitioner had not brought his alleged injury to the department's attention during his years of continued service since the alleged accident.

tion he had previously made. The "reply and affidavit" also requested a hearing in order to develop the facts of conversations between petitioner and the Chief and also to show how other firemen had been able to withdraw their retirement applications prior to the effective dates thereof "with the full cooperation and assistance of the Department of Fire". Petitioner's attorney, in an affidavit sworn on October 17, 1973, stated that an agent of the Retirement System had assured him that if petitioner submitted a written request to withdraw his retirement application, the request would be granted, as "hundreds" had been in the preceding 12 months. In another affidavit Robert E. Smith, president of the Syracuse Firefighters Association, stated that he personally knew of "at least ten instances" where firefighters had informed the fire department and the Retirement System of their desire to withdraw retirement applications prior to the effective dates thereof, and that in all cases the firefighters were allowed to withdraw the applications.

By order to show cause and verified petition dated October 18, 1973, petitioner commenced the second article 78 proceeding in which he seeks judgment "revoking and annulling" the refusal of the Chief and the Onondaga County Department of Personnel "to withdraw petitioner's alleged application for retirement". The petition alleges that respondents' refusal "constitutes an abuse of discretion". In a supporting affidavit petitioner's attorney alleges that he had been advised by respondents' attorney that respondents would not permit withdrawal of the retirement application. In their answer respondents deny that their refusal to permit withdrawal of the retirement application was an abuse of discretion.

Section 207-a of the General Municipal Law provides in pertinent part that a "fireman * * * who is injured in the performance of his duties * * * so as to necessitate medical or other lawful remedial treatment, shall be paid by the municipality * * * by which he is employed the full amount of his regular salary or wages until his disability arising therefrom has ceased, and, in addition, such municipality * * * shall be liable for all medical treatment and hospital care furnished during such disability. Provided, however, [that the municipality shall not be liable for such expenses] after such date as [the municipal] health authorities or [a municipally-appointed physician] shall certify that such injured * * * fireman has

recovered and is physically able to perform his regular duties in the company or department".[2]

Once a fireman makes a legally binding retirement and thereby severs his connection with the City, he is no longer entitled to claim benefits under section 207-a *(Matter of Robinson v Cole,* 193 Misc 717). The question of when a retirement is legally binding for purposes of extinguishing section 207-a eligibility has usually been framed in terms of the "voluntariness" or "involuntariness" of the retirement. An opinion of the Attorney-General, after a review of the cases, ventured the following statement of the applicable rule: "If [a fireman] voluntarily retires he will be deemed to have waived the benefits provided by [General Municipal Law, § 207-a] by terminating his status as a fireman and employee of the city * * *. If he involuntarily retires—that is, 'is retired' by the acts of some city official — or if he is talked into, or consents to, a retirement under a mistake of law, he may by Court order in an appropriate legal proceeding be restored to his rights". (1963 Opns Atty Gen 111.)

In *Matter of Robinson v Cole, supra)* a fireman alleged that he was permanently disabled as a result of injuries sustained in the line of duty in 1943. In 1945 he applied for, and was granted, State retirement benefits. Three years later he filed a notice of claim upon the municipality for section 207-a benefits. Special Term, in dismissing his petition to compel payment of the benefits, reasoned that section 207-a is intended to benefit disabled firemen only so long as they remain firemen, and that petitioner had ceased to be a city employee upon his retirement.

A municipality may not, however, extinguish a fireman's eligibility for section 207-a benefits by retiring him against his will *(Matter of Birmingham v Mirrington,* 284 App Div 721, *supra).* It has also been held that a fireman's retirement is not binding, for purposes of extinguishing section 207-a eligibility, if it was prompted by a mutual mistake of law. In *Matter of Robida v Mirrington* (1 Misc 2d 968, 975) a permanently

---

2. The statute contemplates a disability serious enough that the fireman is unable to perform his "regular duties". The papers do not indicate whether petitioner's duties were suspended or restricted after his 1952 accident, or for how long. While petitioner's chance of success on the merits may seem doubtful, the hoped-for advantage is great. A disabled fireman, once his entitlement to section 207-a benefits is established, remains entitled to them for the rest of his life if his disability should last so long *(Cook v City of Binghamton,* 24 AD2d 122; *Matter of Birmingham v Mirrington,* 284 App Div 721, 728).

disabled fireman was paid section 207-a benefits for several years, after which the city entered into an agreement with him whereby he would retire and the city would continue to pay him the difference between his retirement pension and his regular salary. The city honored the agreement for several years but then stopped making the payments. Special Term held that the fireman was entitled to be restored to the fire department payroll and to be paid 207-a benefits, holding that it is "obvious that the [retirement] agreement was the result of a mistake of law". (See, also, *Matter of Devens v Gokey,* 18 Misc 2d 647, revd on other grounds 10 NY2d 898.)

In the present case, unlike the foregoing cases, there is no claim that petitioner was retired against his will, or that his retirement was in any way prompted by erroneous advice from a city official. Petitioner does allege that he tendered his resignation without realizing that his claim to section 207-a benefits might thereby be jeopardized. Thus, like petitioner in *Devens (supra)* he may have been acting under a mistake of law. But this case differs from *Devens* in that here there is no claim that the mistake of law was in any way caused by affirmative acts of the city. Petitioner does allege that he "requests the opportunity for a hearing in order to develop the full facts and conversations which petitioner had with the Chief of Fire with respect to this matter", but nowhere does he allege what the contents of those conversations may have been. We conclude that the petition and supporting affidavits fall short of making the factual showing necessary to raise a triable issue of fact with respect to voluntariness.

Petitioner urges, however, that there should have been a hearing to determine whether the Chief's refusal to permit withdrawal of the retirement letter was arbitrary. Rule XX of the Onondaga County Rules for Classified Service provides, in pertinent part, as follows:

"1. Resignation in Writing

Except as otherwise provided herein, every resignation shall be in writing.

"2. Effective Date

If no effective date is specified in a resignation, it shall take effect upon delivery to or filing in the office of the appointing authority. If an effective date is specified in a resignation, it shall take effect on such specified date [or within 30 days, whichever is sooner] * * *.

"3. Withdrawal or Amendment

A resignation may not be withdrawn, cancelled or amended after it is delivered to the appointing authority, without the consent of the appointing authority."

Thus, upon delivery of the September 24, 1973 letter to the Chief, petitioner committed himself to retire on October 26, 1973, and that commitment was irrevocable without the Chief's consent.

Mandamus will not generally lie to compel the performance of a discretionary act *(Matter of Gimprich v Board of Educ.,* 306 NY 401). Although mandamus is available to compel an officer to perform such an act when he has acted arbitrarily or abused his discretion in refusing to perform it *(Board of Educ. v Levitt,* 42 AD2d 372, 374), or his refusal is "unreasonable" *(Matter of De Matteo v O'Connell,* 11 Misc 2d 28, 30), the record does not contain any fact to support a claim of unreasonableness or an abuse of discretion by the Chief. The affidavit of the president of the firefighters association contains only conclusory and general statements that respondents' refusal in the present case is "categorically against all past practice". We concur with Special Term that petitioner has not raised a triable issue of fact which would permit the withdrawal of his resignation.

Both judgments should be affirmed.

Marsh, P. J., Moule, Dillon and Witmer, JJ., concur.

Judgments unanimously affirmed, without costs.

