OPINION OF THE COURT
Meyer, J.
A fireman who has applied for an accidental disability retirement allowance before his voluntary retirement becomes effective is entitled, upon the granting of the acci *401 dental disability retirement allowance, to receive from the municipality, from and after the date of voluntary retirement, the difference between his regular salary and the disability retirement allowance granted him. The order of the Appellate Division should, therefore, be reversed and the matter remitted to the Supreme Court for entry of judgment in favor of the petitioner.
I
Petitioner, Joseph Klonowski, was employed as a fireman for the City of Auburn Department of Fire from December 12, 1947 until May 11, 1978. On February 17, 1977, he injured his left toe, foot and leg while “pulling hose” in the course of his employment and never thereafter returned to active duty as a fireman. On February 28,1978 he submitted a notice for voluntary retirement; on May 8, 1978 he submitted to the New York State Policemen’s and Firemen’s Retirement System his application for accidental disability retirement as a result of the February, 1977 injury, and on May 10, 1978 he was voluntarily retired by the Department of Fire. On September 6,1978 petitioner’s application for accidental disability benefits was granted by the State Comptroller. Petitioner then requested payment pursuant to section 207-a of the General Municipal Law of the difference between his regular salary and the disability allowance, and respondents granted that request retroactive to May, 1978. In January, 1979, however, respondents terminated the section 207-a payments on the ground that “if, at the time you were granted accidental retirement benefits, you were not on 207-A [sic] benefits, you are not entitled to the wage supplement.”
Klonowski then began this CPLR article 78 proceeding to require payment to him of the difference between his salary and the accidental disability retirement benefit.[1] Respondents’ answer alleged that “petitioner’s attending physician indicated that the petitioner could return to full duties effective November 1, 1977,” that “as of January 1, 1978, the petitioner was not disabled,” and that “effective *402 May 10, 1978, the petitioner voluntarily retired from the employment with the City of Auburn as a fire fighter.” Petitioner served no reply.[2]
The parties requested that the court determine petitioner’s right to the wage supplement alone, based on the uncontroverted facts in the pleadings, and the court, treating the request as one for severance and partial summary judgment, severed and dismissed as to that issue. It found that Klonowski’s right to section 207-a benefits vested at the time his disability commenced and that he had in fact received such benefits from the time of his injury through May 10, 1978. It, nevertheless; held him not entitled to wage supplement payments because he had voluntarily retired. The Appellate Division affirmed in a memorandum stating that by voluntarily retiring, petitioner waived any benefits to which he might have been entitled under section 207-a (citing Matter of Weber v Department of Fire of City of Syracuse, 54 AD2d 164). We granted leave to appeal[3] and now reverse.
II
Matter of Weber was decided in November, 1976. By chapter 965 of the Laws of 1977, section 207-a of the General Municipal Law was extensively revised, effective January 1, 1978. To understand the effect of the revisions on the question now before us requires review of the legislative history of the 1977 act and the case law that had construed the predecessor provisions of the law.
*403 Section 65 of the Civil Service Law (later renum, § 79), as enacted in 1920 and amended in 1924, allowed a member of the New York State Employees Retirement System who as a natural and proximate result of an accident sustained in service was permanently incapacitated, physically or mentally, from performance of his duties to obtain a pension of three quarters of his final average salary (L 1920, ch 741, § 1, as amd by L 1924, ch 619, § 4; see King v City of Newburgh, 84 AD2d 388, 395). Because membership in the State system was open to certain municipal employees, firemen employed by such municipalities were eligible for such a pension (Retirement and Social Security Law, § 30). In 1938, however, the Legislature adopted the original version of what is now section 207-a of the General Municipal Law (L 1938, ch 562), which gave a paid fireman disabled in the performance of his duties the alternative of collecting from “the municipality or fire district by which he is employed the full amount of his regular salary or wages until his disability arising therefrom has ceased”.
The conflicting interests of the firemen and their employers with respect to these statutes created a number of problems. Although the fireman quite naturally opted to remain on the payroll at full salary from the municipality, it was in the interest of the municipality that a disabled fireman retire, because that not only shifted the financial burden entirely to the State Retirement System but also permitted the municipality to replace a disabled nonworking employee with an active able-bodied one. The tensions thus created were exacerbated by the fact that the full pay provision of section 207-a is “ ‘a remedial statute enacted for the benefit of firemen [which] should be liberally construed in their favor’ ” (Matter of Mashnouk v Miles, 55 NY2d 80, 88, quoting Pease v Colucci, 59 AD2d 233, 235). As a result the municipality was required to pay a disabled fireman not only the salary he had been receiving at the time he was disabled but also any increase granted to his not disabled brothers (Matter of Barber v Lupton, 282 App Div 1008, affd 307 NY 770) and to continue paying the disabled fireman until he died even though section 65 of *404 the Civil Service Law permitted his accidental disability retirement “upon the application of the head of the department in which said member is employed” (Matter of Birmingham v Mirrington, 284 App Div 721).
Unsuccessful at ridding themselves of the burden of full-paid nonworking disabled firemen by involuntarily retiring them, the employing municipalities sought to use both a carrot and a stick to the same end. The carrot — an agreement that the municipality would, if the disabled fireman voluntarily retired, supplement his retirement pay by the difference between it and his salary — was, however, held illegal (Matter of Robida v Mirrington, 1 Misc 2d 968), and the stick — termination of employment on the theory that the words “in which he is employed” (emphasis supplied) required that to receive section 207-a benefits the fireman had to be employed at the time of payment — foundered on holdings that those words “relate to the time when the injuries were received” (Matter of Tyler v Gadwood, 195 Misc 674, 678, revd on other grounds 279 App Div 1138) and vested the right to section 207-a benefits at the time of the accident (Pease v Colucci, 59 AD2d 233, 236, supra).
The only exceptions to the latter holding came in cases ruling that a disabled fireman was not entitled to both full pay under section 207-a from the municipality and accidental disability retirement benefits from the State (Matter of Robinson v Cole, 193 Misc 717; see Matter of Geremski v Department of Fire of City of Syracuse, 78 Misc 2d 555, 558, affd 49 AD2d 1013). Although the Robinson holding could properly have been predicated upon the concept that such double payment was not contemplated by the Legislature, the court, though it emphasized the policy against double payment, also held, contrary to the Tyler vesting concept, that Robinson was not entitled to section 207-a benefits because “He is no longer a ‘fireman’ ” (193 Misc, at p 720). It was the latter concept of Robinson that was emphasized in the Weber holding that a fireman who had voluntarily retired was not entitled to section 207-a benefits (54 AD2d, at p 168).
It was against this background that, as we have previously noted in Matter of Mashnouk v Miles (55 NY2d 80, *405 supra) and Cook v City of Binghamton (48 NY2d 323), chapter 965 of the Laws of 1977 was enacted, “the primary aim of the new statute [being] to shift a large portion of the financial burden generated by disabled fire fighters from the municipal payrolls to the appropriate retirement system or pension fund * * * Aside from partially shifting the source of the payments made to disabled fire fighters, there is no indication that the Legislature also intended to reduce the amount of such payments” (Mashnouk, supra, at p 87 [emphasis in original]).
To former section 207-a the 1977 act added provisions permitting the municipality to require a disabled fireman not eligible for accidental disability benefits to perform appropriate work, to terminate section 207-a benefits of such a fireman when he reached normal retirement age,[4] to prohibit a disabled fireman receiving payments or benefits from engaging in outside employment, and to permit the involuntary retirement of a fireman eligible for accidental disability retirement, with the municipality paying the difference between regular salary and the benefit received (Governor’s Memorandum on Approving L 1977, ch 965, NY Legis Ann, 1977, pp 336-337). Thus, the carrot, held illegal in Robida (supra), was legalized, and the municipality was provided with a partial stick — the power involuntarily to retire for accidental disability though not to terminate entirely — sufficient to obviate any possibility of double payment.
That the Legislature, having authorized the involuntary retirement of a fireman eligible for an accidental disability retirement allowance or pension, intended to place in like position those who had relieved the municipality of three quarters of its burden by voluntarily applying for such an allowance or pension is evident from the second sentence of the newly enacted subdivision 4. That sentence reads: “Where such a fireman retires or is retired under any procedure applicable to him, including but not limited to *406 circumstances described in subdivision two of this section or in this subdivision, he shall thereafter, in addition to any portion of regular wages or salary and/or any retirement allowance or pension to which he is then entitled, continue to be entitled to medical treatment and hospital care necessitated by reason of such injury or illness.” “[Sjuch a fireman” is defined by subdivision 1 as a paid fireman disabled in the course of employment. The quoted sentence, therefore, requires payment to a disabled fireman, whether he voluntarily retires or is involuntarily retired, of the “regular wages or salary” to which he was “then” — that is, at the time of retirement — entitled, except as reduced pursuant to subdivision 2 by the disability allowance or pension. Moreover, by the use of the word “thereafter”, it makes clear that such entitlement runs from the time of retirement, subject only to it being thereafter found that the disabled fireman was in fact eligible for the accidental disability allowance or pension. In light of that provision, Matter of Weber v Department of Fire of City of Syracuse (54 AD2d 164, supra) is no longer good law; the salary differential is due a disabled fireman receiving an accidental disability allowance or pension even though he voluntarily retired.
III
It follows that petitioner Klonowski is entitled to the payments he seeks. Though his disability occurred in 1977, he continued to receive full pay until his voluntary retirement in 1978, after the effective date of the statute. That he was not receiving accidental disability benefits at the time he retired is immaterial, for as the later award of such benefits shows, he was then eligible for such benefits. And when he retired he was “then entitled” to regular wages or salary, less the disability benefit ultimately awarded to him retroactive to the time he retired, as a result of the accidental disability retirement application he had previously submitted. Klonowski, who was 52 years of age when the Supreme Court decision and judgment were rendered, therefore remains entitled, despite his voluntary retirement, to the section 207-a differential allowance until he reaches age 70 (or if he elected section 384 of the Retire *407 ment and Social Security Law benefits, until he reaches age 62).
The order of the Appellate Division should, therefore, be reversed, with costs, and the matter remitted to Supreme Court for determination of petitioner’s request for medical expenses and for the entry of judgment in favor of the petitioner in accordance with the foregoing.
Chief Judge Cooke and Judges Jasen, Jones, Wachtler and Fuchsberg concur; Judge Simons taking no part.
Order reversed, with costs, and matter remitted to Supreme Court, Cayuga County, for further proceedings in accordance with the opinion herein.

. The petition also sought reimbursement for past and future disability-related medical expenses as provided for by section 207-a of the General Municipal Law, but pursuant to agreement of the parties that issue was held in abeyance pending determination of petitioner’s right to the wage supplement.

. By failing to reply petitioner admitted that his retirement on May 10, 1978 was voluntary, for that clearly was “new matter,” the petition having carefully avoided any mention of the retirement (CPLR 7804, subd fd]). The other allegations quoted above were not new matter, however; they simply controverted petitioner’s allegation and the Comptroller’s determination (annexed as an exhibit to the petition) that he was permanently incapacitated from performance of his duties, and thus are not admitted by failure to reply. Moreover, the first quoted allegation as to what petitioner’s physician “indicated” is irrelevant, subdivision 1 of section 207-a of the General Municipal Law requiring rather for the department to be relieved of its wage supplement obligation that a “physician appointed * * * by the municipality * * * certify that such injured * * * fireman * * * is physically able to perform his regular duties” (see King v City of Newburgh, 84 AD2d 388, 393).

. By reason of the severance, the judgment is final notwithstanding that the medical expense question remains to be litigated (see Cohen and Karger, Powers of the New York Court of Appeals [rev ed], § 21).

. Normal retirement age for involuntary retirement is 70 (Retirement and Social Security Law, §§ 70, 370) except as to those who by voluntarily electing the additional benefits provided by section 384 of the Retirement and Social Security Law subject themselves to involuntary separation from service at age 62 (Cook v City of Binghamton, 48 NY2d 323, 333, supra).