OPINION OF THE COURT
Gerald E. Loehr, J.
Petitioners, by this proceeding pursuant to article 78 of the Civil Practice Law and Rules, pray for a judgment annulling and setting aside the determination of the respondent Fairview Fire District which reduced the amount of the supplemental benefit paid to petitioner James J. Gresis under General Municipal Law § 207-a (2).
From the papers, it appears that respondent Fairview Fire District is a fire district in Westchester County and petitioner Ronald Kressman is the president of the Greenburgh Uniformed Firefighters Association, Inc. Local 1586, IAFF, AFL-CIO, the duly recognized collective bargaining representative of respondent’s firefighters including officers up to and including the rank of deputy chief. Petitioner James J. Gresis is a retired firefighter who is receiving a performance of duty disability retirement from the New York State Retirement System and a supplemental benefit pursuant to General Municipal Law § 207-a (2).
Petitioner commenced employment with respondent as a firefighter on or about May 12, 1972. On or about March 11, 1988, respondent appointed petitioner to the position of fire captain, and on June 3, 1988, after having completed his probationary period, he was permanently promoted to fire captain. On or about August 8, 1989, petitioner filed an application for a performance of duty disability retirement with the New York State Retirement System based on an event which had occurred on October 29, 1985. On or about March 7, 1990, the retirement system declared petitioner to be permanently incapacitated for the performance of duty and awarded him a performance of duty disability retirement pursuant to section 363-c of the Retirement and Social Security Law. Pursuant to General Municipal Law § 207-a (2), respondent then became obligated to pay petitioner a supplemental benefit which is the difference between the amount of his disability retirement allowance and the amount of “his regular salary and wages” until he reaches mandatory service retirement age (here 70). When petitioner retired, the collective bargaining agreement (CBA) in effect between respondent and the Firefighters Association provided for a graduated salary structure for firefighters based on years of *211 service. It then provided that a lieutenant’s base pay would be a 20% increase over a first-grade firefighter’s salary and that a captain’s base pay would be a 35% increase over a first-grade firefighter’s salary. Petitioner commenced receiving a supplemental benefit on or about March 7, 1990 and, in accordance with the then effective CBA, it was based on a captain’s salary calculated at 35% over a first-grade firefighter. This language remained in the subsequent CBAs until the CBA covering 2005 through 2007, and from March 7, 1990 through August 1, 2006, petitioner received a supplemental benefit calculated under this formula.
In the interim, in 2002, respondent, pursuant to an agreement with the Firefighters Association, requested that Westchester County Department of Human Resources reclassify respondent’s positions of lieutenant to captain and captain to deputy chief. By letter dated August 28, 2002, the department did so and by special order of Robert Mauro, Chief of Department of the Fairview Fire Department, dated September 3, 2002, all current captains — with the exception of petitioner — were reclassified as deputy chiefs. On December 18, 2002, however, the department found that the captain’s test was not appropriate for a deputy chief. Therefore, while the captain’s position was reclassified to deputy chief, the department required that any captains who sought to be so appointed had to take the deputy chiefs examination.[1] It appears that all captains with the exception of petitioner took the deputy chiefs examination and were appointed deputy chiefs.[2]
In the summer of 2006, a new CBA covering the years 2005 through 2007 was negotiated and finalized. For the first time, there were separate contracts for firefighters and officers. Additionally, for the first time, the only officers were captains and deputy chiefs and their salaries were set forth without being tied to the firefighters’ salaries — although as a practical matter, a captain’s salary was now approximately 20% above a first-grade firefighter’s salary and a deputy chiefs salary was 35% above. As a consequence, although petitioner has at all times received a supplemental benefit based on a captain’s salary, *212 starting in mid-2006, a captain’s salary as stated in the new CBA was somewhat less than it had been in 2005 when it was calculated at 35% above the first-grade firefighters’ salary.[3] Moreover, petitioner asserts that by failing to credit him with the salary increases due to deputy chiefs, respondent has decreased the amount of his supplemental benefit by $9,453 per year, which will exceed in total $100,000 by the time petitioner reaches age 70. Petitioner asserts that by continuing to pay him as a captain after reclassifying all other captains as deputy chiefs, respondent has, in reality, demoted him from two grade levels above the firefighter’s grade to one in violation of General Municipal Law § 207-a (2). Additionally, petitioner argues the reduction of his supplemental benefit was arbitrary and capricious and done without a hearing in violation of due process of law.
Subdivision (2) of section 207-a of the General Municipal Law provides that a permanently disabled fireman granted an accidental disability retirement allowance “shall continue to receive from the municipality or fire district by which he is employed, until such time as he shall have attained the mandatory service retirement age . . . the difference between the amounts received under such allowance . . . and the amount of his regular salary or wages” (see Matter of Mashnouk v Miles, 55 NY2d 80, 83 [1982]). Although a remedial statute which was first enacted in furtherance of the public policy to protect firefighters injured and disabled in the performance of their duties (Matter of Birmingham v Mirrington, 284 App Div 721, 726 [4th Dept 1954]), the statute as originally enacted was the subject of a great deal of criticism. Prior to the statute’s amendment in 1977, a fireman entitled to benefits thereunder was entitled to be paid the amount of his regular salary or wages — including any subsequent increases in salary that were given to active firefighters of the same grade or title after the disability arose (Matter of Barber v Lupton, 282 App Div 1008 [1953], affd 307 NY 770 [1954]; Matter of Aitken v City of Mount Vernon, 200 AD2d 667 [2d Dept 1994]) — until the disability ceased, even if the firefighter remained disabled for the remainder of his life (Matter of Mashnouk v Miles, 55 NY2d 80, 84, 85 [1982]). Moreover, the right to these payments was considered a vested property right that could only be divested by the fireman’s own misconduct established after an evidentiary hearing (Matter of City of Cohoes [Uniform Firefighters of Cohoes, Local 2562, IAFF, AFL- *213 CIO], 94 NY2d 686, 692 [2000]).[4] As a consequence, municipalities were without power to involuntarily retire a disabled fireman even though funds were readily available under the New York State Policemen’s and Firemen’s Retirement System to pay a disability allowance or pension. The excessive cost of carrying disabled firemen on the public payroll at full salary, sometimes for life, often prevented local municipalities from employing an adequate force of able-bodied firefighters (Matter of Mashnouk v Miles, 55 NY2d 80, 85 [1982]). In 1977, subdivision (2) of General Municipal Law § 207-a was amended as indicated above. Under the amended statute, municipalities are authorized to apply for an accidental disability allowance on behalf of the injured fireman and if the allowance is granted, the municipality is only obligated to pay the difference between the amounts received under the allowance and the amount of the fireman’s regular salary or wages. With the exception of that change, General Municipal Law § 207-a (2) has been held to continue to require the inclusion of salary increases equal to those paid to active firemen when such increases were negotiated after the award of the disability allowance (Matter of Mashnouk v Miles at 83) and continues to create a vested property right in such payments (Matter of City of Cohoes [Uniform Firefighters of Cohoes, Local 2562, IAFF, AFL-CIO], 94 NY2d 686, 692 [2000]; see, e.g., Matter of Dacey v County of Dutchess, 121 AD2d 536 [2d Dept 1986]).
Petitioner first asserts that respondent could not reduce his section 207-a benefit without having first provided him with a full evidentiary due process hearing. The Court of Appeals in Matter of City of Cohoes (94 NY2d 686 [2000]) held that inasmuch as section 207-a benefits are a property right protected by the Fourteenth Amendment, they cannot be terminated without an appropriate hearing (id. at 692). The termination of benefits there involved, however, was based on the fireman’s own acts, to wit, his refusal to return to work after being found able to do so. Where such was the issue and where the employee disputed the underlying facts, it was held that the determination could not be made without a prior evidentiary hearing (id.). Here, respondent has not terminated petitioner’s benefits; nor is there a dispute as to the material *214 facts. The issue of whether respondent could continue to pay petitioner as a captain when captains are now being paid as lieutenants and all other former captains are being paid as deputy chiefs is a question of law that requires no evidentiary hearing.
Section 207-a guarantees that any fireman who suffers an employment-connected disability will receive his full annual wage which shall not be interrupted or reduced in any respect except as based on the employee’s own misconduct (Pease v Colucci, 59 AD2d 233, 235-236 [4th Dept 1977]). Here, at the time of petitioner’s disability, he was being paid at two salary grades above (or 35% more than) what a firefighter was being paid. After the reclassification, without any misconduct on his part, he was paid at one grade above (or only about 20% more than) a firefighter. Thus, petitioner argues he was, in reality, demoted one grade.
Respondent argues that it has continued to pay him at the grade he retired at: a captain. As a result of the reclassification and the new CBA, however, captains have become what were lieutenants. Petitioner has therefore been demoted in violation of section 207-a.
Respondent also argues that to award petitioner a benefit based on a deputy chiefs salary, a grade for which he is not eligible, would discriminate against those deputy chiefs who successfully earned that promotion. The answer is that section 207-a is a remedial statute enacted for the benefit of disabled firemen (Matter of Mashnouk v Miles, 55 NY2d 80 [1982]), that it was intended to treat a fireman who is injured in the performance of his duties as a member of a special class, and that if petitioner’s salary could be reduced, it could be reduced to zero in obvious violation of the statute (Pease v Colucci, 59 AD2d 233 [4th Dept 1977]).
For the foregoing reasons, the court finds that respondent’s reduction of petitioner’s supplemental benefit from two grades above a firefighter’s to one grade above a firefighter’s was arbitrary and capricious and in violation of General Municipal Law § 207-a (2).

. With respect to the lieutenants, based on the test they had already taken and the duties and responsibilities to be performed, the department ruled that lieutenants could be appointed as captains without having to take the captain’s examination.

. The record is silent as to whether petitioner was actually eligible or able — due to his disability retirement — to take the deputy chiefs examination.

. The exact amount of the decrease is not set forth in the papers.

. Thus, in Pease v Colucci it was held that a disabled fireman receiving benefits under section 207-a could not be laid off when the City of Buffalo abolished his lieutenant’s position in accordance with his CBA for economy reasons (59 AD2d 233, 236 [4th Dept 1977]).