Matter of McKay v Village of Endicott (2018 NY Slip Op 03406)





Matter of McKay v Village of Endicott


2018 NY Slip Op 03406


Decided on May 10, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: May 10, 2018

525212

[*1]In the Matter of JOSEPH W. McKAY, Respondent,
v
VILLAGE OF ENDICOTT et al., Appellants.

Calendar Date: March 29, 2018

Before: Garry, P.J., Egan Jr., Devine, Aarons and Rumsey, JJ.


Coughlin & Gerhart, LLP, Binghamton (Lars P. Mead of counsel), for appellants.
McDonough & Artz, PC, Binghamton (Philip J. Artz of counsel), for respondent.


Garry, P.J.

MEMORANDUM AND ORDER
Appeal from a judgment of the Supreme Court (Lebous, J.), entered June 8, 2017 in Broome County, which granted petitioner's application, in a proceeding pursuant to CPLR article 78, to annul a determination of respondent Village of Endicott denying petitioner's application for supplemental benefits pursuant to General Municipal Law § 207-a (2).
Petitioner was employed as a firefighter by respondent Village of Endicott (hereinafter respondent) until he became disabled as the result of an April 2008 work-related injury. Petitioner and respondent then disagreed about petitioner's eligibility for disability benefits pursuant to General Municipal Law § 207-a, and their dispute led, among other things, to the
commencement of this CPLR article 78 proceeding. The related facts are described in more detail in our prior decision in this proceeding (139 AD3d 1327 [2016], lv denied 28 NY3d 912 [2017]) and in our decisions in two previous appeals in a separate but closely related CPLR article 78 proceeding (Matter of McKay v Village of Endicott, 137 AD3d 1462 [2016]; Matter of McKay v Village of Endicott, 113 AD3d 989 [2014], lv dismissed 23 NY3d 1015 [2014]).
The current appeal arises from this Court's 2016 determination that respondent is bound by a Hearing Officer's determination that petitioner is entitled to supplemental permanent disability benefits under General Municipal Law § 207-a (2) for a period beginning in December 2010 and continuing until he reaches mandatory service retirement age (139 AD3d at 1330-1331). Following that decision, petitioner proposed a judgment establishing the amount of benefits due to him. In opposition, respondent argued that petitioner's calculations were incorrect because, as pertinent here, they were premised upon a base salary that improperly included certain payments provided for in the governing collective bargaining agreement (hereinafter [*2]CBA). In September 2016, Supreme Court (Tait, J.) found that the payments were properly included and, in June 2017, Supreme Court (Lebous, J.) issued a judgment directing respondent to pay retroactive and prospective benefits to petitioner based upon a salary calculation that includes the disputed payments. Respondents appeal.[FN1]
General Municipal Law § 207-a (2) requires respondent to pay supplemental disability benefits to petitioner as of December 2010, when he began receiving performance of duty disability retirement benefits, in the amount of "the difference between the [performance of duty disability retirement] amounts received . . . and the amount of his regular salary or wages" (see Retirement and Social Security Law § 363-c; Matter of McKay v Village of Endicott, 137 AD3d at 1463). The amount of a disabled firefighter's regular salary or wages, within the meaning of this statute, "is calculated based on the current salary of an active firefighter at the same grade the pensioner held upon retirement" (Matter of Farber v City of Utica, 97 NY2d 476, 479 [2002], cert denied 537 US 823 [2002]; see Matter of Wise v Jennings, 290 AD2d 702, 703 [2002], lv denied 97 NY2d 612 [2002]). This calculation includes prospective salary increases and decreases that take effect after a disabled firefighter retires (see Matter of Whitted v City of Newburgh, 126 AD3d 910, 911 [2015]; Matter of Wise v Jennings, 290 AD2d at 703; Matter of Drahos v Village of Johnson City, 80 AD2d 106, 107 [1981]; see also Matter of Mashnouk v Miles, 55 NY2d 80, 88 [1982]). However, a CBA may not be construed to imply the expansion of a disabled firefighter's rights beyond those granted by the statute (see Matter of Chalachan v City of Binghamton, 55 NY2d 989, 990 [1982]). Thus, unless a CBA expressly awards contractual benefits that are not part of regular salary or wages to recipients of benefits under General Municipal Law § 207-a, the recipients are not entitled to them (see id.; see also Matter of Uniform Firefighters of Cohoes, Local 2562, IAFF, AFL-CIO v City of Cohoes, 94 NY2d 686, 694-695 [2000]; Matter of Town of Niskayuna [Fortune], 14 AD3d 913, 914 [2005], lv denied 5 NY3d 716 [2005]).
The parties' dispute here focuses on whether the calculation of the amount of petitioner's supplemental disability payments should include two contractual benefits that he was receiving when he retired, identified in the CBA as "EMS" pay and "schedule adjustment" pay. As the CBA does not expressly award either benefit to disabled firefighters, petitioner is entitled to the inclusion of these payments only if they are part of his regular salary or wages within the meaning of General Municipal Law § 207-a. Respondent contends that both are additional payments that were not part of petitioner's regular salary or wages and, thus, that they should not have been included in the calculation of petitioner's supplemental disability benefits.
Turning first to EMS pay, petitioner was employed when he retired at the rank of "Firefighter 1st Grade/EMS" and was participating in a contractual benefit described in the CBA as the EMS program. According to the CBA, participants in this program receive an annual payment in a specified amount "to be added to [his or her] base salary." When an employee ceases to participate, his or her "base salary shall be reduced" by the amount of the additional [*3]payment. The plain language of the contract thus contemplates that EMS pay is included in a participant's base salary, rather than treated as a separate, additional benefit. Also supporting this conclusion, the rank of "[First] Grade/EMS" that petitioner held at the time of his retirement — and the applicable salary — are listed in respondent's pay schedule separately from those ranks and salaries that do not apply to EMS participants.
We reject the contention by respondent that a separate CBA provision precludes a finding that EMS pay is part of petitioner's regular salary and wages. The provision referenced by respondent pertains generally to additional compensation for firefighters with various professional specializations, and states that these payments "shall not be added to the base salary." However, the provision appears in a part of the CBA headed "Future Impact Issues," and further states that, "upon operation by [respondent] of a new revenue-generation program" outside respondent's boundaries that involves firefighters with certain professional certifications, the bargaining unit will receive a stated percentage of any revenues received by respondent, which funds are to be divided equally among the unit's membership. Nothing in the language of this provision other than a reference to emergency medical technicians suggests that the EMS program is included. Indeed, the EMS provision appears separately within the CBA, and is otherwise clearly distinct; it applies to a single, identified program, sets out a specific amount of EMS compensation rather than a percentage of a revenue source, is paid only to program participants, and is not divided equally among the membership. "It is well established that where a contract employs contradictory language, specific provisions control over general provisions" (Foley v Foley, 155 AD3d 1506, 1507 [2017] [internal quotation marks, brackets, ellipsis and citations omitted]; see Muzak Corp. v Hotel Taft Corp., 1 NY2d 42, 46 [1956]). To the extent that these two provisions may be read to contradict one another, the specific language of the EMS provision controls over the more general terms of the professional specialties provision. Thus, the language in the EMS provision indicating that EMS payments are included in an employee's base salary is unaffected by the preclusory language in the other provision.
There is no merit in the further argument by respondent that petitioner is not entitled to EMS pay because the EMS provision within the CBA limits such payments to active participants, while petitioner has retired. We reiterate the basic principle that supplemental disability payments are based upon the salaries of active firefighters employed at the same grade held by a disabled firefighter "upon retirement" (Matter of Farber v City of Utica, 97 NY2d at 479 [emphasis added]; see Matter of Wise v Jennings, 290 AD2d at 703). A current firefighter employed at the "[First] Grade/EMS" rank that petitioner held when he retired would, by virtue of that rank, be an active participant in the EMS program and would receive the salary applicable to that grade, which includes EMS payments. "[General Municipal Law § ] 207-a is a remedial statute enacted for the benefit of fire[fighters] which should be liberally construed in their favor" (Matter of Klonowski v Department of Fire of City of Auburn, 58 NY2d 398, 403 [1983] [internal quotation marks, brackets and citations omitted]). Interpreting the statutory phrase "regular salary or wages" in that light, we agree with Supreme Court that petitioner's base salary for this purpose is that of a current firefighter employed at the "[First] Grade/EMS" rank and, thus, that the EMS payment is part of his regular salary or wages for the purpose of calculating the amount of his supplemental disability benefits.
Turning next to schedule adjustment pay, the CBA states that, because the fire department works on a 24-hour schedule rather than a standard 40-hour work week, firefighters will receive a schedule adjustment, added to their base pay, that is calculated to compensate them for the additional work hours needed to implement the schedule. The schedule adjustment, equivalent to an additional 5.5 work hours per week, is paid to all on-duty firefighters and is removed when a firefighter is
absent from duty for 30 days. Petitioner, like all other firefighters on active duty, was receiving the adjustment when he retired, and an active firefighter currently employed at petitioner's rank would likewise receive the adjustment. Thus, for the same reasons discussed in relation to EMS pay, we reject respondent's argument that the schedule adjustment should not be included in the calculation of petitioner's benefits on the ground that he is retired and has been absent from duty for more than 30 days (see Matter of Farber v City of Utica, 97 NY2d at 479). Further, because all active firefighters are employed on the 24-hour schedule and receive the adjustment, this determination does not "'unfairly discriminate against employees actually working'" as does the inclusion of shift differential payments received only by those active employees who are scheduled for undesirable shifts (Benson v County of Nassau, 137 AD2d 642, 643-644 [1988], lv denied 72 NY2d 809 [1988], quoting Matter of Chalachan v City of Binghamton, 55 NY2d at 990; see also Matter of City of New York v Davis, 146 AD2d 480, 483-484 [1989]). Accordingly, schedule adjustment pay was properly included in the computation of petitioner's regular salary or wages.
Finally, the argument that Supreme Court's interest calculations were incorrect was premised upon a theory that EMS pay and schedule adjustment pay should not have been included in petitioner's regular salary or wages. In view of our determinations in that regard, we find no error in the court's interest calculations.
Egan Jr., Devine, Aarons and Rumsey, JJ., concur.
ORDERED that the judgment is affirmed, without costs.



Footnotes

Footnote 1: In October 2016, Supreme Court (Tait, J.) issued an amended judgment in the separate CPLR article 78 proceeding that ordered respondent to pay retroactive benefits to petitioner for the period from December 2010 through February 2014, in an amount based upon the inclusion of the disputed contractual payments. Respondent appealed, raising essentially identical issues to those involved in this appeal (Matter of McKay v Village of Endicott, ___ AD3d ___ [appeal No. 525154, decided herewith]).