Stewart F. Hancock, Jr., J.
In this article 78 proceeding the petitioner, a fire fighter of the City of Syracuse, seeks a judgment directing the respondents to pay him during his disability the full amount of his wages and his medical and hospital costs pursuant to section 207-a of the General Municipal Law.
The sole question is whether petitioner’s disability resulting from a diseased and damaged heart — for which he eventually underwent surgery — is causally related to the performance of his duties as a fire fighter. Specifically, this court must decide whether petitioner was ‘ ‘ injured in the performance of his duties or * * * taken sick as a result of the performance *167 of his duties so as to necessitate medical or other lawful remedial treatment ”. (General Municipal Law, § 207-a.) (See order of Hon. William R. Roy, J. S. 0., dated February 2, 1972 transferring the proceeding to Trial Term for a determination of this issue.)
The petitioner, Francis Geremski, 37 years old at the time of the hearing, joined the Syracuse Fire Department as a fire fighter in September of 1959. The physical examination on admission showed that he was in good health and had no heart disease. He apparently performed without difficulty all of his regularly assigned duties with his engine company which included, among other things, driving apparatus, search and rescue, erecting ladders to the upper floors, laying hoses, pulling down ceilings and walls and other work necessary to extinguish fires. The work entailed lifting, climbing ladders into burning buildings and the inhalation of smoke. It is clear that the duties of a fire fighter were hard and strenuous and performed at a fast pace.
On or about June 20, 1969, shortly after fighting a fire, the petitioner felt pressure in his chest and experienced pain which was later diagnosed as “angina pain”. Although he could not recall the time or location or other specific details of the particular fire, he described it as a “ working fire ” or as a “signal 99” in which he would have performed all of his generally assigned duties.
Until this episode, petitioner had been capable of any level of physical activity “ without distress or symptoms or limitation.”
After this initial attack the petitioner resumed his regular duties. Thereafter, however, on some occasions he experienced angina symptoms after moderate effort. He received medication and was placed on a 30-day sick leave commencing August 15, 1969. About the middle of November, 1969, after returning from sick leave and after a period of “light duty” petitioner was again assigned to his full-time fire fighting activities.
On May 27, 1970 petitioner responded with his company to a fire at 623 Hawley Avenue in Syracuse. It was a “ signal 99 ” or “ working fire ”. The petitioner and others worked for approximately 20 or 25 minutes on the second floor doing ‘ ‘ overhaul work ’ ’; i.e., pulling down ceilings, opening up walls and baseboards and clearing debris. He was wearing no breathing apparatus and testified he inhaled a considerable amount of smoke. When he started out of the building from the second floor he stated he experienced a severe angina attack which he described as follows: “ Well, I received pressure in the chest, *168 shortness of breath and a pain down my right arm or, my left arm, and they helped me over to the Bescue Squad and the Bescue Squad administered oxygen to me and transported me to the Community Hospital.”
An electrocardiogram given at the hospital was negative and the patient, after examination, was released. He went home and again undertook his regular fire fighting duties until the end of June, 1970 when he was assigned to light duty in the Chief’s office and the Fire Marshal’s office. An official report of the May 27,1970 incident involving petitioner’s attack, reporting that oxygen had been administered and that the petitioner was taken to Community Hospital was submitted to the Chief of Fire.
On February 28, 1971 petitioner again experienced a severe angina attack — this time while lying in bed watching TV. Subsequently, tests and an arteriogram revealed that he had a 90% blockage in one of his coronary arteries for which surgery was ultimately performed in July of 1971. From March 1, 1971 petitioner has not worked for the Fire Department and the evidence is that he has been continuously disabled.
The official determination of respondents denying petitoner’s request for compensation under section 207-a of the General Municipal Law was based on a four-line letter of the Fire Surgeon, Dr. Baurice B. Laffer, dated July 30, 1971, stating that, in his opinion, ‘ ‘ the disability of Firefighter Francis B. Geremski is not service connected.” Petitioner stated that he was never at any time examined by Dr. Laffer in connection with his heart condition. Dr. Laffer had no record of having made any examination of petitioner, nor did he have any specific recollection of any such examination. Nor did it appear that he at any time ever had any notes or records or written memoranda pertaining to any history obtained from the petitioner concerning his heart condition.
Three doctors were called as witnesses by petitioner, each of whom was of the opinion that petitioner’s disability was work-related.
Dr. Goffreda G. Gensini, a heart specialist, testified that tests, including a left heart catheterization, coronary arteriogram and left ventriculogram, given on March 25, 1971 revealed that petitioner had a 90% obstruction of the left descending coronary artery. Dr. Gensini stated that, in his opinion, while the underlying condition of cholesterol deposits and other foreign substances in the artery walls (i.e. the formation of the plaque) was not work-related, the coronary occlusion or severe obstruc *169 tion of the coronary arteries that the petitioner had suffered was the result of the extraordinary exertion involved in fire fighting. The doctor testified:
“ Q Would you explain it further?
‘ ‘ A Extraordinary activity may indeed be responsible for the coronary occlusion.
“ Q In what way would that happen, doctor?
“ A Along the mechanism I have explained previously, that there is additional stress placed on this plaque which at one point will burst the plaque open and produce a sudden occlusion of a vessel that was obstructed, but still functioning to that point.”
And Dr. Gensini further testified:
“ Q Now, let me ask you this based on your examination of Mr. Geremski and the discovery of this coronary occlusion which you found him to have, is it your opinion that his disability resulting from that occlusion, was the result of the performance of his duties as a fire fighter ?
“ A Tes.”
It was Dr. Gensini’s opinion that the occlusion or obstruction had resulted either from the activity during the fire which occurred on or about June 20, 1969 or the fire of May 27, 1970 which had resulted in petitioner’s hospitalization.
Dr. John J. Duggan, petitioner’s attending physician, stated that, in his opinion, petitioner had suffered from a coronary occlusion which resulted from the strenuous effort of fighting the fire in June of 1969. Dr. Duggan’s opinion was based, in part, on the fact that prior to this fire the petitioner “ had been capable of any level of physical activity without distress or symptoms or limitation,” and that after this event modest effort led to pain in his chest.
Dr. George 0. Heitzman, the surgeon who operated on petitioner to relieve the obstructed coronary artery, gave his opinion that the petitioner had suffered from a coronary occlusion or “ severe coronary arterial obstruction” which he said would usually occur rapidly. He stated that petitioner’s work as a fire fighter was a “ principal factor in the clinical evidence of his coronary arteries. ’ ’
Respondents called as their expert witness, Dr. Willard Cohen, a heart specialist, who examined petitioner on behalf of respondents on April 4, 1972, several months after petitioner’s surgery and after determination of Dr. Laffer, the Fire Surgeon, that petitioner’s heart condition was not work-related. Dr. Cohen expressed the opinion — based on his examination and on the *170 history given him — that the petitioner had suffered a coronary occlusion but that it was in no way caused by or related to his work activities.
This court finds from the evidence that petitioner did sustain a coronary occlusion or severe blockage of one or more of the coronary arteries which ultimately necessitated surgery and which has caused petitioner’s continuing disability. This court further finds that such condition was caused, or contributed to, in a substantial degree by the severe stress and the strenuous activity incidental to petitioner’s work as afire fighter, including the activities of petitioner in fighting the fire which occurred on or about June 20, 1969 and the fire of May 27,1970.
While no case has been found concerning disability from a heart condition under section 207-a of the General Municipal Law, the above conclusions seem consistent with cases involving the Workmen’s Compensation Law. Courts have sustained findings of causal connection between physical exertion and coronary occlusion or coronary thrombosis. (See Matter of Schuren v. Wolfson, 30 N Y 2d 90; Matter of McCormick v. Green Bus Lines, 29 N Y 2d 246-249; Matter of Shaw v. Browers Garage, 295 N. Y. 709; Matter of Molinari v. Dodge Plumbing Co., 7 A D 2d 792.)
It is this court’s conclusion, in view of the above findings, that petitioner was “ injured in the performance of his duties or * * taken sick as a result of the performance of his duties so as to necessitate medical or other lawful remedial treatment ” within the meaning of section 207-a of the General Municipal Law; and that his disability from such injury or sickness, resulting from the performance of his duties, has not yet ceased.
The petitioner contends that he is entitled to the presumption created by section 207-k of the General Municipal Law, at least in connection with the attack which occurred on February 28, 1971, after the effective date of this section. (L. 1970, ch. 805, eff. July 1,1970.)
In view of the above finding's that petitioner has sustained his burden of showing that his injury or sickness was incurred in the performance and discharge of his duties, it is not necessary to pass upon this question. In any event, it would appear that the provisions of section 207-k of the General ■ Municipal Law are not intended to apply to paid firemen or policemen of towns, villages or districts or any cities of less than one million in population. (See provision in section 207-k Municipal Law excepting from the operatioi of the General of the statute sections 207-a and 207-c of the General Municipal Law.)