KENNETH KING, Respondent, v CITY OF NEWBURGH et al., Appellants.

Second Department, January 25, 1982

APPEARANCES OF COUNSEL

*William M. Kavanaugh, Corporation Counsel* for appellants.

*Howard S. Dallow* for respondent.

**OPINION OF THE COURT**

DAMIANI, J.

The petitioner, Kenneth King, was employed by the City of Newburgh as a fireman. In 1971 he had suffered an injury to his leg and had been placed on light duty for some 10 months. Because his company was understaffed he was assigned to duty on a fire engine on the night of November

13 and the morning of November 14, 1971. Petitioner claimed that during that tour of duty his company answered five alarms and while returning from the last call the Fire Chief's car broke down and had to be pushed off the highway. He assisted in the pushing and while doing so he claims to have experienced chest pains which he "passed off as indigestion". Petitioner went home but the chest pains worsened and he was eventually taken to a hospital where a heart attack was diagnosed. Petitioner's illness was reported by telephone to the headquarters of the fire department on November 14, 1971 and he was placed on sick leave.

On December 11, 1971 petitioner was discharged from the hospital to continue a convalescent program at home but he suffered a recurrence on December 24, 1971 and was readmitted to the hospital's intensive care unit. After his release from the hospital petitioner wrote to the Fire Chief of the City of Newburgh on February 23, 1972, formally reporting his illness, claiming that it was sustained in the line of duty, and requesting that he be placed "on accident leave instead of sick leave."

At the time petitioner suffered the heart attack, accident leave was governed by section 207-a of the General Municipal Law, which then provided in relevant part that: "[a]ny paid fireman of a fire company or fire department of a city of less than one million population * * * who is injured in the performance of his duties or who is taken sick as a result of the performance of his duties so as to necessitate medical or other lawful remedial treatment, shall be paid by the municipality or fire district by which he is employed the full amount of his regular salary or wages until his disability arising therefrom has ceased, and, in addition, such municipality or fire district shall be liable for all medical treatment and hospital care furnished during such disability."

On March 20, 1972 the Chief of the Fire Department of the City of Newburgh wrote to petitioner advising him that the question of whether he should be placed on accident or sick leave had been turned over to the City Manager for consultation with the Corporation Counsel. So far as the papers in this record show, the city never expressly deter-

mined whether petitioner was entitled to leave under the foregoing provisions of section 207-a of the General Municipal Law. However, on October 11, 1972, May 14, 1973 and November 12, 1973 the City Council, pursuant to requests from the fire department, granted extensions of sick leave for petitioner. Throughout this period petitioner received his full pay from the city although he apparently did not render any services therefor because of his illness.

Petitioner asserts that on numerous occasions the City Manager communicated with him in an attempt to force him to retire. On January 12, 1976 the City Manager wrote to petitioner stating that his salary would be terminated immediately, for the purpose of getting petitioner "off of dead center" by determining whether he should be "on medical disability and retire with three-quarter pay". Petitioner alleges that he refused to retire and was discharged by the City Manager, but was reinstated by the Mayor and City Council pending submission and approval of an application for retirement. The papers requesting an accidental disability retirement pension were allegedly prepared by city officials, signed by petitioner at their request, and submitted to the New York State Policemen's and Firemen's Retirement System on January 17, 1976.

Apparently the retirement application was not acted upon soon enough to suit the City Manager, for on June 1, 1976 he wrote to petitioner stating that unless he heard from petitioner "as to why you have not retired as yet" he would be "forced" to terminate petitioner's salary immediately. Despite this letter, nothing further happened until October 4, 1976 when the New York State Policemen's and Firemen's Retirement System granted petitioner an accidental disability pension at three quarters of his salary under section 363 of the Retirement and Social Security Law upon a finding that he was "physically incapacitated for the performance of duty as the natural and proximate result of an accident sustained in service."

After the approval of his retirement application petitioner left the employ of the city, at which time the city allegedly paid him a lump sum representing sick leave accrued prior to his illness, which leave it had previously contended had been used up during the almost five years

since 1971 that petitioner had not worked. Petitioner apparently also sought payment for vacation time which had accrued during his period of disability. The Fire Chief requested an opinion from the Corporation Counsel as to whether petitioner was entitled to vacation pay. The Corporation Counsel opined that he was not, upon the ground that *since petitioner was on section 207-a leave* he was not entitled to compensation for unused sick and vacation time accumulated during his absence because of disability.

By chapter 965 of the Laws of 1977 (effective Jan. 1, 1978) section 207-a of the General Municipal Law was extensively revised. The amendment provided in part that where the disability was permanent, payment of the full amount of the fireman's salary would be discontinued if he was granted a disability retirement allowance pursuant to section 363 of the Retirement and Social Security Law, provided that the municipality or fire district would be obliged to pay the difference between the fireman's State pension and his regular salary until, *inter alia,* such time as he attained mandatory retirement age.

Upon learning of the amendment, petitioner wrote to the City Manager of the City of Newburgh and requested that pursuant to section 207-a, as amended, the city pay him the difference between his three-quarters State pension, which had been granted under section 363 of the Retirement and Social Security Law, and his regular salary. This request was referred to the Corporation Counsel and he, in turn, sought an opinion from the State Department of Audit and Control. The Department of Audit and Control answered that in its opinion the new section did not apply retroactively but that petitioner could not be divested of his right to benefits under the former section other than by his own free and voluntary act. Upon receipt of the reply from the Department of Audit and Control, the City Corporation Counsel wrote to the Fire Chief on March 27, 1979 stating in relevant part:

"The Audit and Control opinion which I attach does not deal with the question of whether Mr. King waived his right to full salary. I do have copies of various letters to Mr. King from former City Manager James Taylor which indi-

cate that Mr. King did not voluntarily retire but was rather ordered to retire. I attach copies of these letters.

"Since Mr. King did not voluntarily retire, he is entitled to receive the difference between his retirement benefits and his full salary under former Section 207-A."

On or about September 28, 1979 the City of Newburgh commenced paying petitioner the difference between his State pension and his regular salary. On January 24, 1980 the City Manager wrote petitioner stating that since petitioner was awarded his pension prior to the effective date of the 1977 amendment to section 207-a of the General Municipal Law, he was not entitled to the supplementary payments which the city had been making and they were being terminated forthwith.

On or about April 16, 1980 petitioner commenced this proceeding pursuant to CPLR article 78 to compel the appellants to pay him until he attains mandatory retirement age the difference between the amounts received under his State pension and his regular salary. The answer of the appellants denied the material allegations of the petition and asserted three defenses, namely (1) that petitioner was never entitled to benefits under section 207-a because his illness did not arise out of the performance of his duties as a fireman, (2) that the city never awarded him section 207-a benefits, but rather paid sick leave only, and the question of whether he is entitled to such section 207-a benefits is an administrative determination to be made by the city in the first instance and (3) that petitioner's claim is barred by the Statute of Limitations and laches.

Justice KELLY, sitting in Special Term, Orange County, struck the first two defenses asserted by appellants upon the ground, *inter alia,* that since the city had paid petitioner's full salary for five years after his illness, albeit under the claim that it was sick pay, and then had paid him further sick pay upon his retirement, the appellants should be estopped from claiming that the petitioner's illness did not arise from the performance of his duties. The matter was set down for a hearing to determine whether petitioner's rights to section 207-a benefits were extinguished by a voluntary retirement or whether he was forced to retire.

Determination of the Statute of Limitations issue was deferred pending the outcome of the hearing. Apparently the court's action was taken *sua sponte* because the record on this appeal does not contain a notice of motion to dismiss or for summary judgment.

The entitlement of a paid fireman of a fire company or fire department of a city of less than 1,000,000 to benefits under former section 207-a of the General Municipal Law was dependent upon two factors, namely, (1) he must have either been injured in, or taken sick as a result of, the performance of his duties prior to January 1, 1978 and (2) by reason thereof he must have been disabled from performing his regular duties. It was for the municipality or fire district by whom the fireman was employed to make the determination as to whether those two criteria were met. A fireman aggrieved by that determination could then seek to review it upon the grounds stated in CPLR 7803 (subd 3), or upon the ground stated in CPLR 7803 (subd 4) if made after a hearing. That the determination was to be made in the first instance by the fireman's employer is evident from the fact that the statute gave the municipality or fire district the right to have its physician attend the fireman from time to time "for the purpose of providing medical, surgical or other treatment, *or for making inspections*" (emphasis added). Such inspections could only have been for the purpose of determining the fireman's eligibility for benefits. A court may not itself make the determination of eligibility and impose its factual findings upon the municipality or fire district (cf. *Matter of Sullivan v Board of Trustees of N.Y. Fire Dept. Art. 1-B Pension Fund,* 42 AD2d 541; *Matter of City of New York v Schoeck,* 294 NY 559, 570; and cases cited in Ann., 27 ALR2d 974, 977, n 4; but see *Matter of Geremski v Department of Fire of City of Syracuse,* 72 Misc 2d 166, affd 42 AD2d 1050, mot for lv to app den 33 NY2d 521).

Appellants' first defense asserts, in substance, that petitioner was not entitled to section 207-a benefits because his alleged illness did not arise out of the performance of his duties as a fireman. Special Term dismissed that defense. Although it is our view that the defense as stated is improper because it would put Special Term in the position

of having to take evidence and reach its own *de novo* determination as to whether petitioner's illness was work related, that defense should not have been dismissed out of hand. We construe it to be an assertion that appellants made a determination that petitioner was not entitled to section 207-a benefits for the reason that his illness was not work related and that their determination is not affected by an error of law or arbitrary or capricious or an abuse of discretion (CPLR 7803, subd 3). In this regard we note, however, that appellants have not filed their return with respect to any proceedings relating to the rejection of petitioner's section 207-a claim and that if this defense is to withstand a motion for summary judgment, they must do so forthwith (CPLR 7804, subd [e]; 24 Carmody-Wait 2d, NY Prac, §§ 145:306, 145:347). As stated, *infra,* the Statute of Limitations has run on any proceeding to review a determination denying section 207-a benefits to petitioner made before his retirement in 1976. Accordingly, the importance of the appellants' first defense within the context of this proceeding is to assert that such a presently unreviewable determination was in fact made. The present record does not support that assertion.

Appellants' second defense, which is inconsistent with their first defense, is to the effect that the city had never awarded petitioner benefits under former section 207-a and that a determination of his eligibility is an administrative one which had never been made by the city. The second defense was also erroneously stricken by Special Term. The ground ascribed for that action was that the appellants should be estopped from denying that petitioner's illness was work related. It is the general rule that the doctrine of estoppel does not operate against a municipality or the public officials thereof, for acts within their governmental capacity (21 NY Jur, Estoppel, § 78; *Matter of Bloomberg-Dubin v Board of Educ.,* 82 AD2d 854; for a discussion of the justifications for the general rule see Note, Equitable Estoppel of the Government, 79 Col L Rev 551, 552-554). In fact, it has recently been termed "unthinkable" to estop a government agency "acting on behalf of the State and the citizenry * * * through mistake or otherwise * * * from discharging the responsibility vested

in it by legislative enactment" (*Matter of Hamptons Hosp. & Med. Center v Moore,* 52 NY2d 88, 93-94). For the reasons which follow it is our view that the instant record presents a sharp question of fact which should be determined at a hearing as to the assertion in appellants' second defense that the city never determined that petitioner was entitled to benefits under former section 207-a of the General Municipal Law.

The instant case can best be understood in the light of a brief review of the benefits which the law has provided for civil servants injured in the course of their duties. In 1920 the Legislature enacted former section 65 (later former § 79) of the Civil Service Law, as thereafter amended in 1924, which, *inter alia,* provided that a member of the New York State Employees Retirement System who was permanently physically or mentally incapacitated for the performance of his duties as a natural and proximate result of an accident sustained in service would be entitled to a pension of three quarters of his final average salary (L 1920, ch 741, § 1, as amd by L 1924, ch 619, § 4; 1937 Opns Atty Gen 128, 129). Membership in the State system was available to certain municipal employees (Civil Service Law, former § 76; Retirement and Social Security Law, § 30), and thus firemen were often eligible for accidental disability retirement. In 1938 the Legislature enacted what was to become former section 207-a of the General Municipal Law (L 1938, ch 562; L 1941, ch 15). The result was that a fireman who was permanently disabled as the result of a service related injury or illness was often covered by two inconsistent benefit provisions. He could retire and receive a State pension at three quarters of his pay or he could remain on the municipal payroll and, under the terms of former section 207-a, his employer would be obliged to pay his full salary until his disability ceased, even if it lasted for the duration of his life (*Matter of Birmingham v Mirrington,* 284 App Div 721).

The natural result of this duplicative statutory scheme was that permanently injured firemen most often wished to remain on the payroll so that they could collect their full salary for life whereas their municipal employers preferred that those firemen retire so that they could avoid the

onerous financial burden of paying full salary for no work and thus shift the duty to pay the injured employees to the retirement system. Not surprisingly instances arose in which municipalities had caused permanently disabled firemen to be involuntarily retired (see, e.g., *Matter of Birmingham v Mirrington, supra; Matter of Tyler v Gadwood,* 195 Misc 674, revd on other grounds 279 App Div 1138; *Matter of Robida v Mirrington,* 1 Misc 2d 968; *Cook v City of Binghamton,* 24 AD2d 122; 18 Opns St Comp, 1962, p 211). In *Matter of Birmingham v Mirrington* (*supra*), it was held, however, that a city could not force a permanently disabled fireman to retire against his will and that he could, by the institution of a timely proceeding, compel his reinstatement.

After *Matter of Birmingham v Mirrington* (*supra*), the municipalities took another tack in attempting to relieve themselves of the financial burden imposed by former section 207-a of the General Municipal Law. They persuaded permanently injured firemen to voluntarily retire upon the promise that they would pay the difference between the three-quarter accidental disability pension and the fireman's full salary. Thereafter, this scheme was held to be unlawful (*Matter of Robida v Mirrington, supra;* cf. *Matter of Robinson v Cole,* 193 Misc 717; 6 Opns St Comp, 1950, p 374; 7 Opns St Comp, 1951, p 104).

The belated amendment of section 207-a in 1977 was intended, *inter alia,* to permit a municipality to involuntarily retire a permanently disabled fireman, with the municipality paying only the difference between the disability benefit and his normal salary (L 1977, ch 965). In his approval message Governor Carey stated that the purpose of the amendment was to "substantially reduce the financial burden of municipalities with respect to payments to disabled firemen and [to] allow funds presently used for such payments to be used to hire able firemen and thereby increase the level of fire protection in municipalities throughout the State" (NY Legis Ann, 1977, p 337).

In *Cook v City of Binghamton* (48 NY2d 323) the Court of Appeals held that the provisions of chapter 965 of the Laws of 1977, which amended section 207-a, could lawfully be retroactively applied to firemen disabled before its effec-

tive date. If the illness or injury is permanent in nature and prevents the present performance of the fireman's duties, the municipality can, unlike the rule under former section 207-a, now apply for his involuntary retirement pursuant to section 363 of the Retirement and Social Security Law. If an accidental disability pension is granted, the municipality must continue to pay the fireman the difference between his pension benefits and his regular salary, but only until he shall have attained mandatory retirement age or have attained the age or performed the period of service specified by applicable law for the termination of his service (*Cook v City of Binghamton, supra,* pp 332-333; General Municipal Law, § 207-a, subd 2).

The record in this case clearly indicates that shortly after his heart attack petitioner made a timely request to the Fire Chief to be put on accidental disability leave pursuant to former section 207-a rather than sick leave. The request was duly referred to the City Manager for consultation with the Corporation Counsel but apparently no formal determination was made thereon. During this time petitioner was nevertheless paid his regular salary for more than four years based upon resolutions of the City Council authorizing extended sick leave benefits. Although petitioner supported his request for section 207-a benefits with letters from his doctor to the effect that activity on the fire truck after 10 months of light duty was the precipitating cause of an acute coronary thrombosis which disabled him from further service as a fireman, there is no indication that the city ever caused petitioner to be examined by its own doctors. It is alleged that in 1976 the city forced petitioner to retire under threat of being discharged and that upon his receipt of an accidental disability pension from the State, it (1) paid petitioner a sum representing accrued sick leave which leave would have been fully expended had petitioner really been on sick leave since the onset of his illness and (2) denied him vacation pay upon the ground that he could not have accrued vacation time since the time of his disablement because he was thereafter on section 207-a leave.

The picture thus presented would support a finding of fact that the city had from the outset determined that petitioner was entitled to benefits under former section 207-a but because of the fiscal burden imposed by that statute which could last until petitioner's death, it decided to ignore his request and subtly pressure him into making an apparently "voluntary" application for retirement. It could be found that as time went on the city became more and more impatient and its pressure for petitioner's retirement became more heavy handed. After the retirement application had been made and accepted, the city, free from the possibility that it might have to pay benefits until petitioner's death, then treated him as though he had been on section 207-a leave since the onset of his disability. The appellants, however, deny that they ever determined that petitioner was disabled within the meaning of section 207-a and, as stated above, it is our opinion that that question should be resolved at a hearing.

If the finder of fact at the hearing concludes that the appellants made no determination, prior to or contemporaneous with his retirement, as to whether petitioner was disabled within the meaning of former section 207-a, or if they determined that he was not entitled to benefits thereunder because his illness was not work related, then this proceeding should be dismissed as barred by the four-month Statute of Limitations contained in CPLR 217. If his retirement in 1976 was involuntary, petitioner was certainly aggrieved at that time by his alleged wrongful discharge, by the alleged failure of the city to determine his eligibility under section 207-a or by a determination that he was not so entitled, and by its refusal to continue to pay his full salary. The commencement of this proceeding in April, 1980 was clearly not timely to review the actions or inaction of the appellants in 1976 and prior thereto (see *Matter of Devens v Gokey,* 12 AD2d 135, 137, affd 10 NY2d 898).

In 1978, however, petitioner sought, under the amended statute, to have the city pay the difference between his pension and his regular salary. While under the interpretation of the 1977 amendment announced in *Cook v City of Binghamton* (48 NY2d 323, *supra*), a city may now cause

the involuntary retirement of permanently disabled firemen whose injury or illness antedated the effective date of the amendment, at the time petitioner left the city's employ in 1976 the former law governed and, if involuntary, his retirement amounted to a wrongful removal of the petitioner from public employment (*Matter of Devens v Gokey, supra; Matter of Dushane v Kazmierczak,* 192 Misc 23, affd 274 App Div 1025). The record in this case would support a finding that the actions of the appellants in dealing with petitioner's 1978 request for benefits under section 207-a as amended, amounted to a full reconsideration of whether he was wrongfully forced to retire, although there is no evidence to show that at that time they gave any reconsideration to whether petitioner was eligible for section 207-a benefits in the first place. The city paid petitioner the difference between his pension and regular salary from September, 1979 until January 24, 1980. This proceeding was commenced on or about April 16, 1980, within four months of the termination of such payments. The city contends that the payments were made by mistake.

At the hearing it should be determined whether in 1976 the appellants formally or informally determined that petitioner was eligible for benefits under section 207-a, but nevertheless wrongfully forced his retirement as a means of avoiding the financial burden imposed by the statute. If that is so, then the court should go on to determine whether the subsequent payments were made by mistake or whether in 1978 the appellants engaged in such a fresh and complete examination of the facts surrounding whether petitioner's retirement was voluntary or involuntary as to constitute a reconsideration of that question on the merits thereby reviving the Statute of Limitations (cf. *Matter of Teperman v Board of Educ.,* 61 AD2d 843; *Matter of Camperlengo v State Liq. Auth.,* 16 AD2d 342, 344). Finally, if such reconsideration is proven and the Statute of Limitations is therefore not a bar to relief, the appellants should be directed to resume payments to petitioner of the difference between his pension and his regular salary until such time as the amended section 207-a provides for the termination of those payments.

Mollen, P. J., Gibbons and Thompson, JJ., concur.

In a proceeding pursuant to CPLR article 78 to compel the City of Newburgh and certain of its officials to pay petitioner, a retired fireman, the difference between his New York State accidental disability retirement pension and the full amount of his regular salary, pursuant to subdivision 2 of section 207-a of the General Municipal Law, the appeal is purportedly taken as of right from an order of the Supreme Court, Orange County, dated January 16, 1981, which struck the first and second defenses asserted in appellants' answer, directed that a hearing be held on the voluntariness of petitioner's retirement and deferred determination of appellants' third defense pending said hearing.

On the court's own motion, appellants' notice of appeal is deemed an application for leave to appeal and is referred to Justice Damiani for determination. Leave to appeal is granted by Justice Damiani.

Order modified by deleting the provisions striking the first and second defenses and substituting therefor a provision reinstating said defenses. As so modified, order affirmed, without costs or disbursements, and a hearing is directed in accordance with the opinion herein.

The appeal was improperly taken as of right since such an appeal does not lie from an intermediate order made in a proceeding pursuant to CPLR article 78 (CPLR 5701, subd [b], par 1).