Local 589, International Association of Fire Fighters, AFL-CIO, Respondent, v City of Newburgh, Appellant.

Second Department, April 21, 1986

### APPEARANCES OF COUNSEL

*William M. Kavanaugh, Corporation Counsel (William F. Ketcham* on the brief), for appellant.

*Crain & Rones, P. C. (Joseph P. Rones* of counsel), for respondent.

### OPINION OF THE COURT

LAZER, J.

At issue is the validity of a collective bargaining provision which under certain circumstances confers upon a private physician selected by mutual agreement of the parties the power to decide whether a fire fighter sustained a job-related illness or injury for purposes of establishing eligibility for benefits pursuant to General Municipal Law § 207-a. We conclude that the provision is a valid one.

Local 589, International Association of Fire Fighters, AFL-CIO, commenced this proceeding to confirm a compulsory arbitration award imposing a contract between Local 589 and the City of Newburgh after an impasse had been reached in the collective bargaining process. The city cross-moved to vacate the arbitration award on a variety of grounds, only one of which is raised on this appeal from the ensuing judgment confirming the award. Contending that Special Term erred in confirming the portion of the award that amended article

XXIV of the collective bargaining agreement, the city argues that the provisions of the award establishing a procedure for determining section 207-a benefits are contrary to public policy and thus that portion of the award must be vacated.

General Municipal Law § 207-a requires a municipality with a population of under 1,000,000 to provide fire fighters who are disabled in the line of duty with greater benefits than those awarded fire fighters who are otherwise disabled. Since the statute is remedial in nature and is intended to provide a benefit to fire fighters, it is to be construed liberally in their favor (see, Matter of Mashnouk v Miles, 55 NY2d 80, 88; Pease v Colucci, 59 AD2d 233, 235).

Unlike the provisions conferring somewhat similar benefits on fire fighters employed by the City of New York (see, Administrative Code of City of New York § B19-7.84), section 207-a establishes no procedural framework for determining whether a fire fighter has suffered a job-related illness or injury, instead allowing each municipality to formulate its own procedure consistent with the demands of due process (see, Legg v Fitzmaurice, 112 Misc 2d 283). Presumably, this was intended to permit each municipality to devise a methodology consistent with local needs.

The previous collective bargaining agreement between the City of Newburgh and Local 589 established a medical review board to determine whether a fire fighter had sustained a job-related injury or illness. Article XXIV of that agreement provided as follows:

"There shall be a Medical Review Board to determine whether an individual member of the unit has an illness or injury which is job related under 207-a of the General Municipal Law. Such Board shall be comprised of a physician selected by the unit member, a physician selected by the City and in the event that these physicians cannot agree, then a physician shall be selected by the mutual agreement of the individual's physician and the City's physician to make a determination.

"The recommendation of the physician selected by the mutual agreement of the individual's physician and the City's physician shall be advisory to the hearing officer named by the City in determining benefits under Section 207a [sic] of the General Municipal Law. Subject only to review in an Article 78 proceeding."

The arbitrators included this provision in the new contract

they imposed, but with an important modification which is the subject of the instant dispute. The second paragraph of the article was amended to read: "The determination of the physician selected by the mutual agreement of the individuals *[sic]* physician on *[sic]* the city's physician shall be final subject to an appeal in an Article 78 proceeding by either party." Although the wording of the provision leaves much to be desired, all parties agree that the effect of this modification is to grant determinative power to the agreed-upon physician. They disagree as to the validity of the provision.

In determining the validity question, it is irrelevant that the contract was imposed by compulsory arbitration and was not reached through successful collective bargaining. It is well settled that a court may set aside a binding compulsory arbitration award of this nature only if the award is found to be arbitrary and capricious *(see, Caso v Coffey,* 41 NY2d 153, 158; *Mount St. Mary's Hosp. v Catherwood,* 26 NY2d 493, 508-510). In deciding whether an award has a rational basis or is arbitrary and capricious, various factors will come into play, depending on the nature of both the challenged provision of the award and the challenge itself. For example, when the challenge is made to the amount of a wage increase on the basis of the employer's fiscal condition, the strength of the evidence proffered to the arbitral panel is clearly relevant *(see, Caso v Coffey, supra,* at p 158). On the other hand, when, as here, a contractual provision in such an award is attacked as being contrary to public policy, it can be deemed arbitrary and capricious only if the same provision would be deemed violative of public policy had it been freely entered into by the employer. Any other approach would limit the efficacy of this means of resolving public labor disputes.

So viewed, the question before us is whether a municipality may delegate to a physician selected by the parties to their agreement the power to determine whether a fire fighter suffers from a job-related illness or injury.

At the outset, we conclude that delegating the determination whether a fire fighter has sustained a job-related injury or illness to a private physician when the physicians selected by the city and Local 589 are unable to agree is analogous to submitting such a dispute to an arbitrator, and the validity of such a delegation is to be tested by the same principles as are applied to determine whether a public entity may delegate a part of its decision-making power to an arbitrator. The general rule, of course, is that a public employer may agree to

arbitrate disputes with its employees (see, Syracuse Teachers Assn. v Board of Educ., 35 NY2d 743, 744; Board of Educ. v Associated Teachers, 30 NY2d 122). Nonetheless, there exist "a small number of areas, interlaced with strong governmental or societal interests" (Binghamton Civ. Serv. Forum v City of Binghamton, 44 NY2d 23, 29, citing Matter of Susquehanna Val. Cent. School Dist. [Susquehanna Val. Teachers' Assn.], 37 NY2d 614, 616-617) which are so basic to the proper functioning of the public employer that it may not delegate the power to make decisions falling within those areas. Thus, if the delegation of the decision-making power in this case does implicate a strong public policy, "as evidenced by statutory and decisional law" (Binghamton Civ. Serv. Forum v City of Binghamton, supra, at p 29), it must be set aside (see, e.g., Matter of Candor Cent. School Dist. [Candor Teachers Assn.], 42 NY2d 266).

This public policy exception to arbitrability has been applied sparingly in recent years as arbitration has achieved increasing recognition as a viable means of settling disputes. Thus, the Court of Appeals, in rejecting a challenge to an arbitration award which limited the powers of a school district in making teacher assignments, unequivocally declared that: "Incantations of 'public policy' may not be advanced to overturn every arbitration award that impairs the flexibility of management of a school district. Every collective bargaining agreement involves some relinquishment of educational control by a school district. Only when the award contravenes a strong public policy, almost invariably involving an important constitutional or statutory duty or responsibility, may it be set aside" (Matter of Port Jefferson Sta. Teachers Assn. v Brookhaven-Comsewogue Union Free School Dist., 45 NY2d 898, 899). In a similar vein, the Court of Appeals has upheld the delegation by a public employer to an arbitrator of the power to impose sanctions on errant public servants, even when the misconduct rises to the level of receiving bribes to violate the public trust, and the sanction imposed is relatively minor (Binghamton Civ. Serv. Forum v City of Binghamton, supra). When such significant aspects of a public body's authority can be delegated to an arbitrator, it follows that the power to decide whether a particular fire fighter has sustained a job-related injury or illness can similarly be submitted to an unbiased third-party physician, at least in the absence of a clear and convincing indication of a contrary legislative intent.

In determining whether there is contrary legislative intent, we have considered the fact that certain other statutes conferring similar benefits on public employees specifically provide that the determination of whether an injury is job related is to be made by a specific official or body. Nevertheless, an examination of the relevant provisions reveals no comprehensive scheme for making such determinations. Rather, in each case the Legislature has taken a separate approach, varying with the public entity involved. Thus, in those cases in which the State Retirement System is the source of the benefits, the statutes specifically delegate that power to the Comptroller (*see, e.g.,* Retirement and Social Security Law §§ 363, 363-c). When the benefits are to be paid to police or fire fighters employed by the City of New York from their respective pension funds, the New York City Council chose to utilize a more formal, bifurcated procedure, whereby the determination whether an employee was disabled is to be made by a medical review board, whereas the determination whether the injury was job related is to be made by a board of trustees in which the power is equally divided between city representatives and employee representatives (Administrative Code §§ B18-43.0, B19-7.84; *Matter of Canfora v Board of Trustees,* 60 NY2d 347; *Matter of City of New York v Schoeck,* 294 NY 559, 567-568). Finally, with respect to benefits to be paid by the many other municipalities, the Legislature has chosen not to provide any particular mechanism for determining eligibility, instead allowing each public entity to fashion its own methodology (*see,* General Municipal Law §§ 207-a, 207-c).

While the decision is necessarily to be made by the employer or its agents in the absence of any other provisions (*see, King v City of Newburgh,* 84 AD2d 388, 393), this in no way indicates a legislative intent to preclude delegation. Indeed, two contrary lessons are to be drawn from the statutes. First, in enacting each provision, the Legislature established whatever procedure it thought most suitable under the circumstances and, more importantly, when the Legislature wished to provide a specific procedure, it was quite capable of doing so. Hence, we find no basis in the statutes for any public policy against delegation. Moreover, the mere fact that the power has initially been assigned to the municipality by the Legislature is certainly not determinative, for if that were so, all delegation would be improper.

We see no merit in the argument that the delegation is

illegal because it permits persons who are not public officials to decide matters involving the expenditure of public funds. The delegation to a third party of decisions requiring the payment of public moneys is not per se violative of public policy, for that is exactly what happens whenever a wage settlement is imposed upon a public employer through the compulsory interest arbitration process *(see, e.g., Caso v Coffey, 41 NY2d 153, supra).* In the instant case, moreover, the Legislature, in enacting General Municipal Law § 207-a and its predecessors, has already made the fundamental, discretionary decision that a fire fighter who suffers a job-related injury or illness is entitled to the benefits provided by that statute, and that public funds must be expended to provide those benefits. Thus, a fire fighter in that situation must be awarded such benefits as a matter of right and regardless of the effect on the municipal budget. The only determination to be made is the essentially factual decision whether a particular fire fighter does in fact have a job-related injury or illness. While this may at times pose a complex question, it does not implicate any fundamental policy concerns. Therefore, we find no justification for concluding that this decision may not be delegated to an impartial physician while decisions concerning such important matters as appropriate sanctions for malfeasance by public employees *(Binghamton Civ. Serv. Forum v City of Binghamton,* 44 NY2d 23, *supra),* teacher assignments *(Matter of Port Jefferson Sta. Teachers Assn. v Brookhaven-Comsewogue Union Free School Dist.,* 45 NY2d 898, *supra),* and staff size *(Matter of Susquehanna Val. Cent. School Dist. [Susquehanna Val. Teachers' Assn.],* 37 NY2d 614, *supra)* may be delegated to an arbitrator.

The determination whether a fire fighter has suffered a job-related illness or injury simply does not implicate the type of basic policy decisions at issue in those cases in which public policy has been held to bar delegation. This can be seen by consideration of the teacher tenure area, which provides what is perhaps the clearest example of an improper delegation of power. The Court of Appeals has held that the duty of a school board to determine whether a probationary teacher is to be granted tenure may not be delegated to a third party *(Matter of Cohoes City School Dist. v Cohoes Teachers Assn.,* 40 NY2d 774).* Unlike the determination at issue here, the duty to make tenure determinations is specifically imposed by statute upon a board of education and, more importantly, the decision is so discretionary in nature that a board need give

no reason for a denial of tenure unless it has been established that the denial was apparently for an illegal reason (Education Law §§ 2509, 2573, 3012; *James v Board of Educ.,* 37 NY2d 891). It is because the exercise of the power to grant or deny tenure involves a consideration of numerous discretionary factors relating to such matters as the ability of the teacher and the educational policies and needs of the district that this decision must ultimately rest with the school board. Any other rule would impair the board's fundamental obligation to maintain an adequate educational system *(Matter of Cohoes City School Dist. v Cohoes Teachers Assn., supra,* at pp 777-778). For similar reasons it has been held that a school board may not give up its power to inspect teacher personnel files, a function deemed essential to the tenure determination *(see, Board of Educ. v Areman,* 41 NY2d 527, 531-533).

It is only when the proposed delegation involves such fundamental policy concerns, however, that it will be barred on public policy grounds *(see generally, Matter of Port Washington Union Free School Dist. v Port Washington Teachers Assn.,* 45 NY2d 411). Thus, a school district is free to supplement the tenure decision with preliminary procedural safeguards and to establish grievance procedures for tenured teachers *(see, Matter of Cohoes City School Dist. v Cohoes Teachers Assn., supra; Matter of Candor Cent. School Dist. [Candor Teachers Assn.],* 42 NY2d 266, *supra; Board of Educ. v Associated Teachers,* 30 NY2d 122, *supra).* Similarly, a school district may limit its power to assign teachers *(Matter of Port Jefferson Sta. Teachers Assn. v Brookhaven-Comsewogue Union Free School Dist.,* 45 NY2d 898, *supra)* and to determine questions of staff size *(Matter of Susquehanna Val. Cent. School Dist. [Susquehanna Val. Teachers' Assn.],* 37 NY2d 614, *supra),* although these determinations clearly involve educational policy to some extent. In short, in the absence of a specific legislative proscription, it is only when a fundamental policy decision is at issue that public policy precludes delegation.

Simply put, the determination whether a fire fighter has suffered a job-related injury or illness implicates no such fundamental and discretionary policy decision. If he or she has sustained such an injury or illness, benefits must be provided, regardless of the effect on the public entity's budget and without any review of relevant governmental policies. Thus, there exists no overriding reason why this factual decision cannot be left to an unbiased third-party physician without running afoul of any strong public policy.

Accordingly, there should be an affirmance of the judgment insofar as appealed from.

RUBIN, J. (concurring in part and dissenting in part). The issue on this appeal is whether a provision in a collective bargaining agreement which, in effect, delegates to a private physician a municipality's duty to make the quasi-judicial determination as to whether a fire fighter is eligible for disability benefits pursuant to General Municipal Law § 207-a is unenforcible as against public policy.

General Municipal Law § 207-a (1) imposes upon a municipality or fire district the obligation to pay a fire fighter who has been injured or taken sick as a result of the performance of his duties the full amount of his regular salary plus medical expenses for the duration of the disability.

Article XXIV of the previous collective bargaining agreement between the City of Newburgh and Local 589 of the International Association of Fire Fighters, AFL-CIO (hereinafter the union) provided for a medical review board to give an advisory recommendation to the city's hearing officer as to whether a fire fighter had sustained a job-related injury or illness within the meaning of General Municipal Law § 207-a. The provision read:

"ARTICLE XXIV—MEDICAL REVIEW BOARD

"There shall be a Medical Review Board to determine whether an individual member of the unit has an illness or injury which is job related under 207-a of the General Municipal Law. Such Board shall be comprised of a physician selected by the unit member, a physician selected by the City and in the event that these physicians cannot agree, then a physician shall be selected by the mutual agreement of the individual's physician and the City's physician to make a determination.

"The recommendation of the physician selected by the mutual agreement of the individual's physician and the City's physician shall be advisory to the hearing officer named by the City in determining benefits under Section 207a *[sic]* of the General Municipal Law. Subject only to review in an Article 78 proceeding."

Upon reaching an impasse in negotiating a new contract, the union and the city submitted their disagreement to binding compulsory arbitration before a public arbitration panel, pursuant to Civil Service Law § 209 (4). Among the negotiating proposals submitted by the union was a proposal to alter

article XXIV by deleting the second paragraph, whereby the third physician's decision was declared to be merely advisory. The city countered with a demand that article XXIV be deleted in its entirety and substituted with a provision creating an "accident review board", which would be comprised of two members of management and one union representative. The accident review board would review all accident claims and function solely in an advisory capacity with respect to applications for benefits pursuant to General Municipal Law § 207-a. After conducting a hearing, the arbitration panel rendered an award which, *inter alia,* amended the second paragraph of article XXIV of the expired contract to provide that a "determination of the physician selected by the mutual agreement of the individuals *[sic]* physician [and] the city's physician shall be final subject to an appeal in an Article 78 proceeding by either party".

Thereafter, the union commenced this proceeding pursuant to CPLR article 75 to confirm the award, and the city cross-petitioned to vacate so much of the award as pertained, *inter alia,* to the medical review board. The city contended, *inter alia,* that General Municipal Law § 207-a implicitly vested in the municipality the ultimate responsibility to determine a fire fighter's eligibility for benefits under that section, and the provision of the collective bargaining agreement pertaining to the medical review board was violative of public policy because it impermissibly delegated the municipality's duty to a private physician. Special Term concluded that the arbitration panel's award with respect to the medical review board merely provided a procedure to effectuate the intent and general purpose of section 207-a, and, therefore, was not in violation of public policy. Consequently, in a judgment entered January 26, 1984, it denied that branch of the city's cross petition which was to vacate that provision and confirmed that provision of the arbitration award.

The duty to determine whether a fire fighter is eligible for benefits under General Municipal Law § 207-a, which significantly impacts upon the welfare of the public and the municipality's purse, was implicitly vested by statute in the municipality and cannot be relinquished to a private physician. While public policy would not preclude the city and union from negotiating a procedure to follow in determining eligibility, the arbitrators' award went a step beyond that procedure by reposing the ultimate responsibility for determining eligibility for section 207-a benefits in a physician appointed by

deadlocked members of the medical review board. Such a delegation is violative of public policy.

The broad power of public employers and employees to agree to resolve disputes arising from terms and conditions of employment by arbitration is restricted in "a small number of areas, interlaced with strong governmental or societal interests" *(Binghamton Civ. Serv. Forum v City of Binghamton,* 44 NY2d 23, 29; *Matter of Susquehanna Val. Cent. School Dist. [Susquehanna Val. Teachers' Assn.],* 37 NY2d 614, 616-617). "[T]he general rule that any matter in controversy between a [public employer] and its [employees] may be the subject of collective bargaining is limited 'by plain and clear, rather than express, prohibitions in the statute or decisional law' *(Syracuse Teachers Assn. v Board of Educ.,* 35 NY2d 743, 744) as well as in some instances by '[p]ublic policy, whether derived from, and whether explicit or implicit in statute or decisional law, or in neither' " *(Matter of Cohoes City School Dist. v Cohoes Teachers Assn.,* 40 NY2d 774, 778, quoting from *Matter of Susquehanna Val. Cent. School Dist. [Susquehanna Val. Teachers' Assn.],* supra, at pp 616-617; *Board of Educ. v Areman,* 41 NY2d 527). The latter exception is applicable to the subject matter of this controversy.

General Municipal Law § 207-a provides: "Any paid fireman * * * of an organized fire company or fire department of a city of less than one million population * * * who is injured in the performance of his duties or who is taken sick as a result of the performance of his duties so as to necessitate medical or other lawful remedial treatment, shall be paid by the municipality or fire district by which he is employed the full amount of his regular salary or wages until his disability arising therefrom has ceased, and, in addition, such municipality or fire district shall be liable for all medical treatment and hospital care furnished during such disability. *Provided, however,* and notwithstanding the foregoing provisions of this section, *the municipal health authorities or any physician appointed for the purpose by the municipality or fire district, may attend any such injured or sick fireman, from time to time, for the purpose of providing medical, surgical or other treatment, or for making inspections and the municipality or fire district shall not be liable for salary or wages payable to such a fireman, or for the cost of medical or hospital care or treatment furnished, after such date as the health authorities or such physician shall certify* that such injured or sick fireman has recovered and is physically able to perform his

regular duties in the company or department" (emphasis supplied).

The entitlement of a paid fire fighter of a fire company or fire department of a city of less than 1,000,000 to benefits under General Municipal Law § 207-a is dependent upon two factors, namely, (1) he must have either been injured in, or taken sick as a result of, the performance of his duties, and (2) by reason thereof he must have been disabled from performing his regular duties *(King v City of Newburgh,* 84 AD2d 388, 393). Concededly, the statute does not establish a procedure for determining whether an illness or injury is job related or whether the claimant is disabled from performing his regular duties. Nor does it expressly provide that the municipality or fire district is vested with the exclusive authority to make the ultimate determination of eligibility. Nonetheless, as this court stated in *King v City of Newburgh (supra,* at p 393), "[t]hat the determination was to be made in the first instance by the fireman's employer is evident from the fact that the statute gave the municipality or fire district the right to have its physician attend the firemen from time to time 'for the purpose of providing medical, surgical or other treatment, *or for making inspections'* [emphasis added]. Such inspections could only have been for the purpose of determining the fireman's eligibility for benefits." Cognizant that section 207-a did not provide any procedure for determining eligibility, prior decisional law has similarly concluded that the public employer had the ultimate duty to determine an employee's eligibility for the statutory benefits, albeit the courts recognized that the applicant should be given an opportunity to present evidence as to his eligibility for the benefits before a hearing officer appointed by the public employer *(see, Matter of Callas v City of Elmira,* 88 AD2d 1015; *Legg v Fitzmaurice,* 112 Misc 2d 283; *Matter of Kieper v Fitzgibbons,* 91 Misc 2d 1067; *cf. Matter of Curley v Dilworth,* 96 AD2d 903 [construing General Municipal Law § 207-c which provides similar benefits to policemen employed by a municipality with a population under 1,000,000]).

The significant impact General Municipal Law § 207-a has upon the municipality's purse and the public welfare bolsters the conclusion that the Legislature, by statutorily imposing upon municipalities the obligation to pay benefits to fire fighters who sustain a job-related injury or illness, intended to confer upon the public employer the corresponding duty to ultimately determine a fire fighter's entitlement to such bene-

fits. A brief review of the benefits that the law had provided for fire fighters injured in the course of their duties at the time the Legislature originally enacted what was to become General Municipal Law former § 207-a (L 1938, ch 562; L 1941, ch 15) sheds light upon the ramifications of this statutorily imposed fiscal burden.

Civil Service Law former § 65 (later renum § 79), as enacted in 1920 and amended in 1924, allowed a member of the New York State Employees Retirement System who, as a natural and proximate result of an accident sustained in service, was permanently incapacitated, physically or mentally, from the performance of his duties, to obtain a pension of three quarters of his final average salary (L 1920, ch 741, § 1, as amended by L 1924, ch 619, § 4; *see, King v City of Newburgh,* 84 AD2d 388, 395, *supra).* Because membership in the State system was open to certain municipal employees, fire fighters employed by such municipalities were eligible for such a pension (Civil Service Law former § 76; Retirement and Social Security Law § 30; *Matter of Klonowski v Department of Fire,* 58 NY2d 398, 403). In 1938, however, the Legislature adopted the original version of what is now General Municipal Law § 207-a (L 1938, ch 562), which gave a paid fire fighter disabled in the performance of his duties the alternative of collecting from the municipality or fire district which employed him the full amount of his regular salary or wages until his disability arising therefrom ceased *(Matter of Klonowski v Department of Fire,* 58 NY2d 398, 403, *supra).* This remedial statute, enacted for the benefit of fire fighters *(see, Matter of Mashnouk v Miles,* 55 NY2d 80, 88; *Pease v Colucci,* 59 AD2d 233), required a municipality such as the City of Newburgh to pay a disabled fire fighter not only the salary he had been receiving at the time he was disabled but also any increase granted to fire fighters who were not disabled *(Matter of Barber v Lupton,* 282 App Div 1008, *affd* 307 NY 770), and to continue paying the disabled fire fighter until he died *(Matter of Birmingham v Mirrington,* 284 App Div 721, 728; *Pease v Colucci,* 59 AD2d 233, 235, *supra).* Quite naturally, a disabled fire fighter often opted to remain on the municipal payroll at full salary rather than retiring under the New York State Employees Retirement System. Moreover, before the Legislature extensively revised section 207-a in 1977 (L 1977, ch 965, eff Jan. 1, 1978), the municipality could not involuntarily retire a full-paid, nonworking disabled fire fighter in order to shift the financial burden to the New York State Employees Retirement System

*(see, Matter of Klonowski v Department of Fire, supra)*. Consequently, municipal funds used to pay a disabled, nonworking employee were no longer available to hire an active, able-bodied replacement, which, in turn,, effected the level of fire protection available to the municipality's residents. By Laws of 1977 (ch 965), effective January 1, 1978, the Legislature amended General Municipal Law § 207-a to "reduce the financial burden of municipalities with respect to payments to disabled firefighters and [to] allow funds presently used for such payments to be used to hire able firemen and thereby increase the level of fire protection in municipalities throughout the State" (1977 NY Legis Ann, at 337; *King v City of Newburgh, supra,* at p 396). The amendment allowed the municipality to involuntarily retire a permanently disabled fire fighter and to discontinue payment of the full amount of the fire fighter's salary if he was granted a disability retirement allowance under the State system. However, the municipality or fire district was still obligated to pay the difference between the fire fighter's State pension and his regular salary until, *inter alia,* such time as he attained mandatory retirement age *(see, King v City of Newburgh, supra; Matter of Klonowski v Department of Fire, supra)*. Thus, under the statute as originally enacted, and to a lesser extent under the current version, a determination as to a fire fighter's entitlement to section 207-a benefits, which has less stringent eligibility criteria than the State accident disability retirement pension *(see, Matter of Kieper v Fitzgibbons,* 91 Misc 2d 1067, 1071, *supra),* significantly impacts upon a municipality's purse and the welfare of its residents. In light of the ramifications section 207-a has upon a municipality and its residents, it is unlikely that the Legislature intended to repose the important responsibility of determining a fire fighter's entitlement to the statutory benefits in an entity other than the respective municipality or fire district.

Moreover, analogous statutes which provide benefits for public employees injured or disabled while acting in the performance of their duties have expressly conferred the eligibility determination upon a public entity or public official required to pay the benefits.

For example, the accident disability retirement allowance originally provided by Civil Service Law former § 65 (later renum § 79; repealed by L 1955, ch 687; *see,* Retirement and Social Security Law § 181) to qualifying members of the New York State Employees Retirement System is now covered by

Retirement and Social Security Law § 63. Prior to April 1, 1967, fire fighters employed by municipalities which elected to participate in the New York State Employees Retirement System (see, Retirement and Social Security Law § 30) were eligible for such a pension. It is noteworthy that the Legislature had expressly vested the ultimate responsibility for determining an employee's eligibility for such benefits with the Comptroller (see, Retirement and Social Security Law § 63 [d]; § 74 [b]), albeit a medical board was also established to provide advisory recommendations (see, Retirement and Social Security Law § 74 [e]). By Laws of 1966 (ch 1000, § 2, eff Apr. 1, 1967), the Legislature established a separate retirement system for police and fire fighters and transferred thereto all police and fire fighters who, on the effective date of such article, were members of the New York State Employees Retirement System (see, Retirement and Social Security Law § 292). Every municipality employing police and fire fighters (exclusive of those maintaining a local pension system for all its police and fire fighters) were required to participate in this State system (Retirement and Social Security Law § 330 [a]). Moreover, a municipality maintaining a local pension system for its police and fire fighters could elect to participate in the State system and the operation of the local pension system would be discontinued upon such election (see, Retirement and Social Security Law § 330 [b]). Thus, an accident disability retirement allowance is currently available to eligible fire fighters employed by participating municipalities (see, Retirement and Social Security Law §§ 363, 363-c). Once again, the Legislature has imposed the duty of determining eligibility upon the Comptroller (see, Retirement and Social Security Law § 363 [d]; § 363-c [d]).

The Administrative Code of the City of New York also provides accident disability retirement benefits to its police and fire fighters found by the medical board to be physically or mentally incapacitated for the performance of city service as a natural and proximate result of a service-related accident (see, Administrative Code §§ B18-43.0 [police], B19-7.84.1 [fire fighters]). While the board of trustees of the police and fire fighters' respective pension funds—the public entities entrusted with administering the pension funds—are bound by the police and fire fighters' medical boards' determinations of disability, the Court of Appeals has held that they are not bound by the medical boards' determinations that certain disabilities result from service-related accidents. "The function

and duty of determining the 'circumstances' of the disqualification and of determining the amount of the allowance as provided by the code is conferred upon the board of trustees" *(see, Matter of Canfora v Board of Trustees,* 60 NY2d 347, 351; *Matter of City of New York v Schoeck,* 294 NY 559, 567-568; *see also, Matter of Bennett v Board of Trustees,* 20 AD2d 522, *affd* 16 NY2d 562; *Matter of Belnavis v Board of Trustees,* 84 AD2d 244, *appeal dismissed* 56 NY2d 645; *Matter of Walsh v Codd,* 68 AD2d 805).

General Municipal Law § 207-c (1) imposes upon a city of less than 1,000,000 a corresponding obligation to pay a police officer, who has been injured or taken sick as a result of the performance of his duties, the full amount of his regular salary plus medical expenses for the duration of the disability, "[p]rovided * * * the municipal health authorities or any physician appointed for the purpose by the municipality, after a determination has *first* been made that such injury or sickness was incurred during, or resulted from, such performance of duty, may attend any such injured or sick policeman * * * from time to time, for the purpose of providing medical, surgical or other treatment, or for making inspections" (emphasis supplied). It is strongly evident from the statutory language employed in this provision that the initial determination as to whether an injury or illness was incurred during, or resulted from, the performance of the employee's duty was to be made by the public employer. Since fire fighters and police are substantially accorded parity in treatment under the respective subdivisions of sections 207-a and 207-c, the omission of the words "after a determination has first been made that such injury or sickness was incurred during, or resulted from, such performance of duty" in section 207-a (1) may have been attributable to legislative oversight.

Unlike the medical question of whether or not a public employee is physically or mentally disabled from performing the duties of his employment, the question of whether or not the disability is job related does not necessarily turn on medical criteria alone. Resolution of the latter may turn upon whether the employee was acting within the scope of his employment at the time he sustained an injury or illness. From a review of analogous legislation, the statutory scheme has apparently taken cognizance of the distinction between the two questions and, as a general rule, has imposed the duty of determining whether a disability is job related upon the public entity responsible for paying the statutory benefits to a

disabled employee. There is no readily apparent distinguishing factor to take General Municipal Law § 207-a out of this general statutory scheme.

Although there is no clear prohibition, express or implicit, that would bar the city and union from establishing a medical board to make a binding determination on the question of whether the employee is disabled from performing the duties of his employment (cf. the arbitration award in *Albany County Sheriff's Local 775 [County of Albany]*, 101 AD2d 620, *revd* 63 NY2d 654), I conclude that the Legislature impliedly conferred upon the public employer the duty to ultimately determine an applicant's entitlement to the statutory benefits of section 207-a, i.e., to determine, in the first instance, whether the injury or illness is job related. This conclusion is based upon the language employed in General Municipal Law § 207-a (1) and the corresponding statutory provision applicable to police (*see,* General Municipal Law § 207-c [1]), the important and substantial impact the statute has upon the municipality's purse and the welfare of its residents, the general statutory scheme prevalent in analogous legislative provisions which furnish benefits to public employees with job-related disabilities, and the absence of any discernable fact to distinguish section 207-a from the general statutory scheme.

In this case, the arbitration award pertaining to article XXIV of the collective bargaining agreement divested the municipality of its statutory responsibility to make the ultimate determination regarding an applicant's entitlement to benefits under General Municipal Law § 207-a making a private physician's determination of the issue of whether an illness or injury is job related binding upon the municipality. Inasmuch as this portion of the award delegates an important duty or responsibility statutorily conferred upon a public employer to a private physician, it must be vacated as violative of the public policy of this State. Accordingly, the judgment entered January 26, 1984, should be reversed insofar as appealed from, on the law, without costs or disbursements, and the aforesaid provision of the arbitration award vacated.

MOLLEN, P. J., and NIEHOFF, J., concur with LAZER, J.; RUBIN, J., concurs insofar as the appeal from the order is dismissed but otherwise dissents and votes to reverse the judgment insofar as appealed from, and to vacate that portion of an award of a public arbitration panel which amended article XXIV of a collective bargaining agreement between the parties.

Justice Niehoff has been substituted for former Justice, now Judge Titone *(see,* Judiciary Law § 21; *Wittleder v Citizens' Elec. Illuminating Co.,* 47 App Div 543).

Appeal from an order of the Supreme Court, Orange County, dated January 6, 1984, dismissed *(see, Matter of Aho,* 39 NY2d 241, 248).

Judgment of the same court, entered January 26, 1984, affirmed insofar as appealed from.

The respondent is awarded one bill of costs.